COMMISSIONER OF INTERNAL REVE-
NUE v. DAY & ZIMMERMANN, Inc.

No. 8824.

Circuit Court of Appeals, Third Circuit.
Argued May 15, 1945.
Decided Sept. 25, 1945.

Hilbert P. Zarky, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Frederick E. S. Morrison, of Philadelphia, Pa. (Calvin H. Rankin and Drinker, Biddle & Reath, all of Philadelphia, Pa., on the brief), for appellee.

Before DOBIE, GOODRICH and Mc-LAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The present controversy concerns two deductions of long term capital losses sustained by the taxpayer in 1940 and claimed on its return for that year. The Tax Court held that the losses should be recognized under Section 112(b) (6) of the Internal Revenue Code.[1] As the Tax Court decision is unreported it is necessary to briefly outline the facts.

The taxpayer is a Maryland corporation with its principal office in Philadelphia, Pennsylvania. It is engaged in the business of construction, making investigations and reports and rendering management services. Victor Lynn Transportation Company (hereinafter called Victor) was a Delaware corporation engaged primarily in the motor vehicle transportation of freight. Red Star Lines, Inc., was a Maryland corporation, principally a carrier

---

[1] "Sec. 112. Recognition of gain or loss—

"(a) General rule. Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) Exchanges solely in kind—
* * * * * * * *
"(6) Property received by corporation on complete liquidation of another. No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. For the purposes of this paragraph a distribution shall be considered to be in complete liquidation only if—

"(A) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 per centum of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends), and was at no time on or after the date of the adoption of plan of liquidation and until the receipt of the property the owner of a greater percentage of any class of stock than the percentage of such class owned at the time of the receipt of the property; * * *." 26 U.S.C.A. Int. Rev.Code § 112(a), (b) (6) (A).

of passengers. On August 31, 1938 the taxpayer owned 99% of Victor's preferred stock and 88.8% of the common. Victor owed the taxpayer $23,609.78 and was in financial difficulties. By reason of arrearages in dividends on the preferred stock, the latter was entitled to vote share for share with the common at all times pertinent to this matter. On the same date the taxpayer owned 90% of the preferred of Red Star and 85% of the common. Red Star owed the taxpayer $4500 and it, too, was in business trouble. The same situation prevailed in this corporation as in Victor with respect to the voting right of the preferred. On August 31, 1938 the taxpayer instituted receivership proceedings against both Victor and Red Star and the same receivers were appointed for both corporations. One of the receivers was an official of Day & Zimmermann, Incorporated. Victor was operated by the receivers until March 24, 1939 and Red Star until December 31, 1938, on which respective dates the assets of each company were sold. On December 21, 1939 the taxpayer purchased the remaining 50 shares of Victor preferred and became owner of the entire outstanding preferred stock. On December 26, 1939 the receivers notified the common stockholders of Victor and Red Star that their stock had no value. In the latter part of December 1939, petitioner was advised by its counsel that, under the Revenue Act of 1939, long-term capital losses for the years beginning after December 31, 1939, were not limited to $2,000 plus capital gains, and that in view of Section 112(b) (6) of the Internal Revenue Code, it was advisable to reduce its holdings of stock in Victor and in Red Star by a bona fide sale and closed transaction, to an amount which would be less than the 80% specified in said section, but that Congress might pass another Revenue Act in 1940 changing this rule. That same month the petitioner directed reputable Philadelphia auctioneers to sell 1,102 shares of preferred and 191 shares of common stock of Victor and 242 shares of preferred and 140 shares of common stock of Red Star at public auction to the highest bidder. David Katz, the treasurer of the taxpayer, thereafter purchased the mentioned stock at public auction paying a fair price under all the circumstances and not being directed by any one to bid for the shares. After receiving cash dividends in the later liquidation of the companies he reported his gain and paid income tax on it. After

the auction sale of taxpayer's shares above mentioned, the taxpayer then owned 5,275 voting shares of the 6,768 voting shares of Victor, or 78% of same, and owned 2,318 voting shares of the 3,100 outstanding voting shares of Red Star, or 75% of same. The receivers made two partial accountings in Victor which were duly approved and on December 4, 1940 filed their final report which was also approved and by the Court's order of that date distribution of the balance of the assets of Victor was directed. On December 6, 1940, Day & Zimmermann, as owner of 3,898 preferred shares, or 77.96% of the outstanding preferred stock, received its proportionate share of the final liquidating dividend. Those shares had a basis under the Internal Revenue Code for determining gain or loss upon the sale or exchange thereof of $384,925. The liquidating distribution to Day & Zimmermann totalled $12,868.58 with the result that the taxpayer claimed a 1940 loss of $372,056.42 on the liquidation.

In the Red Star receivership, following a first liquidating dividend, a final order was entered on October 21, 1940 with distribution of the remaining assets directed. Day & Zimmermann, as owner of 758 preferred shares, or 68.91% of the total outstanding preferred stock, received its proportionate share of the final dividend. Those shares had a basis under the Internal Revenue Code for determining gain or loss upon the sale or exchange thereof of $75,800. The liquidation distribution to Day & Zimmermann amounted to $20,118.53 and resulted in a claim by the taxpayer of a 1940 loss on the Red Star liquidation of $55,681.47.

In 1939, the receivers, as stated, had determined that both the Victor and Red Star common stock was worthless with the holders thereof so advised. There was, therefore, nothing received in liquidation on the common stock of either company.

Neither the fact that the taxpayer suffered losses or the amount of those losses is disputed. The Tax Court found that the losses occurred in the year 1940 and that is now conceded by the petitioner. The taxpayer argued below that because of its sale of Victor and Red Star preferred stock at the end of December 1939, it did not own at least 80% of the voting stock of those corporations in 1940 and therefore Section 112(b) (6) did not govern. The Commissioner answering this, asserted that the sale of stock to Katz

served no business purpose in that its only reason was to avoid the provisions of Section 112(b) (6) and that therefore it should not be recognized. The Court did not pass upon that question but decided the matter in favor of the taxpayer on the ground that "Section 112(b) (6) was intended to cover situations in which a corporation receives property, not money, in complete liquidation of another corporation and that loss is recognizable when sustained by a corporation which owned all of stock of another corporation and on liquidation received for such stock money only."

The petitioner urges that if this appeal should turn on whether the taxpayer did own 80% of Victor and Red Star within the meaning of 112(b) (6) (A) then the case should be sent back to the Tax Court for such findings based on the stipulated facts. As we see the matter, the stipulation and the ultimate facts found by the lower Court obviate any such necessity.

 The respondent did recognize the tax situation involved in its stock sales and its conduct is subject to even more careful scrutiny for that reason. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 66, 79 L.Ed. 596, 97 A.L.R. 1355; Meurer Steel Barrel Co. v. Commissioner, 3 Cir., 144 F.2d 282. As both those opinions hold, however, lawful fair efforts to minimize taxes are entirely permissible. While the Tax Court specifically refrained from passing on the question of recognition of the stock sales, nevertheless, from the agreed facts and from its own conclusions of fact, the bona fides of the Katz transaction clearly appears. The stipulation of facts covers the stock sales transaction at great length. It details efforts by Katz to obtain a loan from the Pennsylvania Company for Insurances on Lives and Granting Annuities to enable him to finance his purchase of the shares and his success as to this with later repayment of the loan from his share of the proceeds of the first distribution of liquidation dividends of Victor and Red Star. It states that Katz was the highest bidder at the auction sale; that he purchased the shares for his own account and at his own risk and paid for them with his own funds; that there was no understanding of any kind between him and Day & Zimmermann by which the latter retained any sort of interest in the securities or proceeds therefrom; that following the purchase Katz was owner of record of the shares; that he had discussed, prior to the auction, with C. A. McClure, one of the receivers who was also secretary of Day & Zimmermann, the probable liquidation value of said shares; that Katz was not directed by anyone at all to bid for the shares and that he had been advised by the receiver that the shares were to be sold to whoever was the highest bidder and that in the opinion of the officers of Day & Zimmermann it would be proper for any officer or employee of that concern to bid at the auction for said shares if he so desired; that Katz never discussed the price which he expected to bid with anyone connected with Day & Zimmermann prior to the sale; that no one suggested or directed what amount he should bid and that he made up his own mind as to this, determining that he would not make any bid which was below what he considered to be the fair market value of the shares on the basis of facts known to him after taking into consideration the probable future expenses of the receivership and the possibility of additional claims being presented against the receivers. After Katz received his final liquidation dividend from the receivers he reported in his 1940 federal income tax return his taxable gain and paid the income tax due thereon. Thereafter, the receivers' final accounts were approved and the receivers discharged.

Despite the connection of Katz with Day & Zimmermann there is not the slightest reason arising from the agreed facts for any suspicious inference with respect to his purchase of the stock. The whole background of the transaction is meticulously set out and it all indicates the good faith of both the taxpayer and Katz. Substantiating this is the Tax Court's own conclusion as to the number of preferred shares owned by the taxpayer in 1940. Those figures exclude the shares sold by the company at auction in December 1939 to Katz. In reaching such conclusion, it seems clear that the Tax Court impliedly recognized the Katz sale. Whether it did or not, the facts before us so manifestly point to the legitimacy of the Katz purchase of stock that they offer no alternative but to accept that view of the transaction. It follows necessarily that the taxpayer was not the holder of 80% of the preferred stock of either Victor or Red Star in 1940, the year it suffered its losses.

Section 112(b) (6) therefore does not apply and the taxpayer's losses should be recognized.

In thus agreeing with the decision of the Tax Court, but for a reason different from the one assigned by that tribunal, we are following the well-settled practice, expression of which is found in Helvering v. Gowran, 302 U.S. 238, at pages 245 246, 58 S.Ct. 154, at page 158, 82 L.Ed. 224, where the Court said: "In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason. * * * This applies also to the review of decisions of the Board of Tax Appeals."

Affirmed.