WALTHAM NETOCO THEATRES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5642–65. Filed January 24, 1968.

*John R. Halley,* for the petitioner.
*Rufus E. Stetson,* for the respondent.

OPINION

The precise issue arises in the context of section 311(a) of the Internal Revenue Code of 1954.[1] In pertinent part and except for certain circumstances not relevant herein, that section provides that "no gain or loss shall be recognized to a corporation on the distribution, with respect to its stock, of * * * property." Petitioner contends that, since the instant situation does not fall within any of the exceptions to section 311(a), that section operates as an iron curtain against taxability, and any inquiry as to the applicability of *Commissioner* v. *Court Holding Co.*, 324 U.S. 331 (1945), and *United States* v. *Cumberland Pub. Serv. Co.*, 338 U.S. 451 (1950), is improper. Alternatively, petitioner asserts that, in any event, the subsequent sale of the distributed stock was made independently by and on behalf of petitioner's shareholders, thus falling under the umbrella of *Cumberland.* Respondent counters that the sale was in reality made by petitioner pursuant to a prearranged plan, which was totally lacking in substance and had as its sole purpose the avoidance of a tax at the corporate level. He therefore claims that *Court Holding Co.* applies and relies heavily upon his own regulations which provide that "the proceeds of the sale of property in form made by a shareholder receiving such property in kind from the corporation may be imputed to the corporation *if, in fact, the corporation made the sale.*" See 1.311–1(a), Income Tax Regs. (Emphasis added.)

We deal first with the assertion that the principles of *Court Holding* and *Cumberland* do not apply to the instant case and that section 311(a) standing alone governs. Concededly, at the time the 1954 Code was enacted, Congress did not look with favor upon the fine distinctions developed by the courts in applying these two cases and, as a consequence, incorporated section 337 into the Code.[2] See H. Rept. No. 1337, 83d Cong., 2d Sess., pp. 38, A106 (1954) ; S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 48, 258 (1954). Section 337 was a specific legislative elaboration on section 336, which provides that generally "no gain or loss shall be recognized to a corporation on the distribution of property in partial or complete liquidation." No similar elabora-

---

[1] All references herein, unless otherwise stated, are to the Internal Revenue Code of 1954.
[2] Sec. 337, which by its terms is limited to complete liquidations, has no application herein.

tion was engrafted upon section 311(a), although the statutory language used is substantially identical to that of section 336. Moreover, at the time of the enactment of section 311(a), Congress clearly indicated that existing case law, imposing a tax at the corporate level in situations involving distributions in kind, was to remain intact, except, of course, where section 337 was applicable. See H. Rept. No. 1337, *supra* at A108; S. Rept. No. 1622, *supra* at 247; Mintz and Plumb, "Dividends in Kind—The Thunderbolts and the New Look," 10 Tax L. Rev. 41, 45, fn. 22. Consequently, it has been held that the courts remain free to apply the nonstatutory rules enunciated by the decided cases, including not only assignment of income situations such as was involved in *Commissioner* v. *First State Bank*, 168 F. 2d 1004 (C.A. 5, 1948), but those encompased by *Court Holding* and *Cumberland* as well. *Wood Harmon Corporation* v. *United States*, 311 F. 2d 918, 924 (C.A. 2, 1963); *A.B.C.D. Lands, Inc.*, 41 T.C. 840, 847 (1964). See generally Bittker and Eustice, Federal Income Taxation of Corporations and Shareholders, 176–185 (2d ed. 1966); Mintz and Plumb, *supra* at 44–48.

In view of the foregoing, we are satisfied that the principles of *Court Holding* and *Cumberland* retain their vitality in the area of section 311(a) (see *Williamson* v. *United States*, 292 F. 2d 524, 530–531 (Ct. Cl. 1961)), although it may be that, in situations where the safe harbor of *Cumberland* would be available, the taxpayer will face another barrier (see p. 405–406, *infra*). We recognize that, in the context of these two decisions, it can be argued that the formalities of handling a particular transaction assume a disproportionate importance and that a premium is placed on consulting one's lawyer early enough in the game. Certainly the necessary distinctions "may be particularly shadowy and artificial when the corporation is closely held." See *United States* v. *Cumberland Pub. Serv. Co.*, 338 U.S. at 454–455. But, in light of the applicable legislative history and case law, we conceive it to be our function herein first to consider the circumstances surrounding the sale of the Massachusetts Enterprises stock in light of the tests enunciated in *Court Holding* and *Cumberland*.

There is no real dispute as to the relevant underlying facts herein. The initial objective was to sell the land owned by Massachusetts Enterprises and the negotiations were all carried on in that context. Nothing in the record before us indicates that the conversations between Canter and Gordon, representing the other shareholders of petitioner, encompassed anything but the desire of all concerned to sell the land as a means of obtaining cash. All of the discussions between, and actions by, Canter and the broker fit a pattern of negotiations at the corporate level. There was never any break in the negotiations. They were active and continuous right up until the moment

that the deal with Clevite had been made and the matter had been turned over to the lawyers for the preparation of the legal documents. It was not until after that point in time that a sale at the noncorporate level by petitioner's shareholders was suggested.

Petitioner seeks to avoid the application of *Court Holding* herein by seizing on the fact that the negotiations were in respect of a sale of the land and never in respect of the sale of the stock; that the multiple capacity of Canter provided a legitimate cover for the identity of the seller which was never revealed during the negotiations; and that, in the end, it was the stock of Massachusetts Enterprises which was actually sold. Petitioner may not thus utilize the "hidden ball" play with a screened ball carrier at the expense of the Federal fisc. That the stock of Massachusetts Enterprises was substituted for the land at the last minute does not detract from the fact that the sale herein was never conceived and negotiated as a sale *by the shareholders of petitioner*. Cf. *Merka Holding Co.*, 27 T.C. 82 (1956); *Doyle Hosiery Corporation*, 17 T.C. 641 (1951). The presence of substantial negotiations on behalf of the shareholders, not to mention the fact that the corporation expressly refused to sell the asset at the corporate level, was the distinguishing feature in *Cumberland*. The absence of this element, namely, independent negotiations at the noncorporate level, is the essential weakness of petitioner's position herein.

We cannot accept petitioner's premise that, because there were no negotiations with respect to the sale of the Massachusetts Enterprises stock, the sale must be considered as having been made by petitioner's shareholders. We think that, in order to claim the protection of *Cumberland*, it was incumbent on petitioner to show that the sale was independently negotiated on behalf of its shareholders. Petitioner having failed so to do, we see no reason to disturb respondent's determination that the gain on the sale should be taxable to the entity, i.e., the petitioner, who owned the asset throughout the negotiations and up to the very day of actual transfer to the purchaser. In this connection, we note that the dividend in kind of the stock of Massachusetts Enterprises was not distributed until the day of its prearranged transfer to Clevite. In short, whether we consider the sale itself as having been made by petitioner, or simply that the negotiations had been sufficiently finalized prior to the distribution in kind to warrant attributing the gain to petitioner, we hold that it is taxable on the gain from the sale under the principles of *Court Holding* and *Cumberland*.

We are not unmindful of the language in some decisions that the protection of *Cumberland* may not be available to nonliquidating distributions in kind by an ongoing corporation and that the corporation may be held taxable simply on the ground that there was a tax-motivated preconceived plan. E.g., *United States* v. *Lynch*, 192 F. 2d

718 (C.A. 9, 1951) ; *Commissioner* v. *Transport Trad. & Term. Corp.*, 176 F. 2d 570 (C.A. 2, 1949) ; *A.B.C.D. Lands, Inc.*, *supra;* but see *Diggs* v. *Comissioner*, 281 F. 2d 326 (C.A. 2, 1960). See also Bittker and Eustice, *supra* at 182; Mintz and Plumb, *supra* at 46–48; Bierman, "Corporate Distributions of Appreciated and Depreciated Property: Gain or Loss to the Distributor," 8th Ann. N.Y.U. Tax Inst. 792 (1950) ; Comment, "The Imputed Sale and Anticipatory Assignment of Income Doctrines: Their Effect on I.R.C. Sections 311, 1336," 15 Buffalo L. Rev. 154 (1966). Although the difficulties of applying the distinctions of *Court Holding* and *Cumberland* might be avoided if we were to adopt the broader concept suggested with respect to non-liquidating distributions, we would then be faced with equal, if not greater, difficulties in deciding the relative importance of other factors, such as the character of the assets involved, the effect of a distribution clearly in partial liquidation, the presence or absence of a prior commitment of the shareholders to sell the distributed assets or of an expectation of sale by the shareholders, and the impact of an exclusively or predominant tax-avoidance motivation. Particularly since the actual facts of the above-cited cases do not require the more general rationale found in the opinions, we see no point in exploring such wider horizons until we are compelled to do so. None of the foregoing cases prohibits the application of *Court Holding* and it is that decision which is the foundation of our conclusion herein.

*Decision will be entered for the respondent.*