**WALTHAM NETOCO THEATRES, INC.,**
**Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 7132.**

United States Court of Appeals
First Circuit.
Oct. 9, 1968.

William Shelmerdine, Jr., Boston, Mass., with whom Robert W. Meserve, John K. P. Stone, III, and Nutter, McClennen & Fish, Boston, Mass., were on the brief, for petitioner.

Lester B. Snyder, Atty., Dept. of Justice, with whom Mitchell Rogovin, Asst. Atty. Gen., and Lee A. Jackson and Meyer Rothwacks, Attys., Dept. of Justice, were on the brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

The question raised by this petition for review is whether the Tax Court erred in holding that the gain derived from a sale of all the stock in petitioner's wholly owned subsidiary was taxable to petitioner. There is no dispute as to the relevant underlying facts. Only the Tax Court's conclusions are questioned.[1]

Petitioner was an affiliate of a corporate group whose principal business was the management and operation of motion picture theatres. A majority of its stock was owned by Pilgrim Theatres Corporation (Pilgrim) which in turn was a wholly owned subsidiary of American Theatres Corporation, Inc. (American), the parent and management corporation of the group. Petitioner owned all the stock in another affiliate known as Massachusetts Enterprises, Inc. (Mass. Enterprises). American, Pilgrim, the petitioner, Mass. Enterprises and the other subsidiaries that made up the group had essentially the same officers. One Canter who figured prominently in this case was the treasurer of all these corporations.

The only asset of Mass. Enterprises was a parcel of unimproved real estate in Waltham, Massachusetts, acquired in 1954 for the construction of a drive-in theatre, a project that did not materialize. In 1958 this real estate was put on the market for sale. Early in 1959 Pilgrim found itself in need of ready cash, part of which it hoped to realize from the sale of the real estate in question. In mid April 1959 an oral agreement was reached for the sale of this real estate to Clevite Corporation at a substantial profit. On advice of counsel for the group the sale was accomplished in the following manner. On April 27, 1959, a written agreement was entered into between each of petitioner's stockholders, including Pilgrim, and the purchaser Clevite for the sale of all the stock of Mass. Enterprises. On June 30, 1959, the day of the closing, petitioner cancelled an outstanding indebtedness of Mass. Enterprises treating the same as a contribution to the capital of the subsidiary. It then distributed to its stockholders as a dividend in kind all the shares of Mass. Enterprises. Thereupon the stockholders endorsed and transferred said shares to the purchaser, thus completing the transaction. The total amount paid by the purchaser for these shares was the same as the amount that had been agreed upon orally as the purchase price for the land.[2]

In petitioner's income tax return for 1959 no gain was reported with regard to the sale of the stock. Then as now it took the position that this was a sale by the stockholders, not the petitioner. The Tax Court upheld the Commissioner of Internal Revenue in rejecting that contention. The basic question

---

1. The Tax Court's findings of fact and opinion are reported in 49 T.C. 399 (1968).

2. The total purchase price was $214,300 of which $14,300 represented the real estate broker's commission. Pilgrim's share of the proceeds was some $97,000.

of who *in reality* was the seller in this transaction is a question of fact. In Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945), the Court said:

"The incidence of taxation depends upon the substance of a transaction. The tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title. Rather, the transaction must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant. A sale by one person cannot be transformed for tax purposes into a sale by another by using the latter as a conduit through which to pass title. To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress."

■ Our function is to review the record of the Tax Court to see if there is sufficient evidence to warrant its findings. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Palmer v. Commissioner of Internal Revenue, 354 F.2d 974, 975 (1st Cir. 1965). As stated in United States v. Cumberland Public Service Co., 338 U.S. 451, 456, 70 S.Ct. 280, 282, 94 L.Ed. 251 (1950), a case upon which petitioner relies, "It is for the trial court, upon consideration of an entire transaction, to determine the factual category in which a particular transaction belongs."

In the instant case the Tax Court found, among other things, that the initial objective of this transaction "was to sell the land owned by Massachusetts Enterprises and the negotiations were all carried on in that context." The evidence shows that from the beginning all the negotiations were for the sale of the real estate and were carried on by Canter acting for American.[3] It was in this capacity that Canter originally listed the real estate for sale, retained the broker, negotiated the terms and conditions of the sale and reached an oral agreement with Clevite in mid April for the sale of the real estate. Also, it is undisputed that the expense of advertising this real estate for sale was incurred at the corporate level. The record shows that after the oral agreement of sale was reached Canter, acting for American, consulted the attorneys for the corporate group for the purpose of having the papers drawn. It was only after that consultation that the sale by petitioner's stockholders was suggested. By that time, however, the deal with Clevite for the sale of the real estate had been struck and only the formalities of the transaction remained.

■ Petitioner claims that the sale of the distributed stock, as detailed above, brings the case within the holding in United States v. Cumberland Public Service Co., supra. But this would be true only if the sale were the result of independent and active negotiations by its stockholders with Clevite. We think there is sufficient evidence in the record to support the Tax Court's finding and conclusion that the transaction in question was a sale on the corporate rather than on the stockholder level and that the gain derived therefrom is taxable to the petitioner. See Commissioner of Internal Revenue v. Court Holding Co., supra.

The decision of the Tax Court is affirmed.

---

3. It is undisputed that Canter's salary was paid entirely by American and he testified that throughout this transaction he considered that he was acting for American.