KAMIS ENGINEERING COMPANY, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1659-69, 1668-69—1671-69.    Filed August 27, 1973.

*Jules Silk* and *Harvey N. Shapiro*, for the petitioners.
*Howard W. Gordon*, for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency in income tax of $183,216.83 and an addition to tax under section 6651(a)[2] of $27,482.53 against petitioner Kamis Engineering Co. for the taxable period May 1, 1964, to January 28, 1965. The other petitioners are concededly transferees of Kamis Engineering Co., against whom deficiencies have been determined. All of the cases have been consolidated. In view of the concessions of the parties, the sole issue remaining for decision is whether Kamis Engineering Co. (hereinafter petitioner) is entitled to the benefit of section 337 with respect to a sale of all of its assets.

All of the facts have been stipulated and this consolidated case has been submitted under Rule 30 of the Rules of Practice of this Court.

Petitioner was a corporation organized on July 1, 1963, having its principal place of business in Huntingdon Valley, Pa. It was an active operating company engaged in the business of manufacturing airplane parts. It maintained its books of account on an accrual fiscal year basis ending April 30 and filed its Federal income tax return for the taxable period involved herein with the district director of internal revenue at Philadelphia, Pa.

Philmont Pressed Steel, Inc. (hereinafter Philmont), was a corporation organized on April 21, 1958, having its principal place of business in Huntingdon Valley, Pa. It was an active operating company engaged in the business of manufacturing metal stampings for auto ac-

---

[1] Cases of the following petitioners are consolidated herewith: Jack Finkle, Transferee, docket No. 1668-69; Jule Finkle, Transferee, docket No. 1669-69; Arthur Finkle, Transferee, docket No. 1670-69; and Maurice Finkle, Transferee, docket No. 1671-69.

[2] All statutory references, unless otherwise indicated, are to the Internal Revenue Code of 1954 as amended and in effect during the taxable period involved.

cessories. It maintained its books of account on an accrual fiscal year basis ending April 30 and filed its Federal income tax return for the taxable period involved herein with the district director of internal revenue at Philadelphia, Pa.

Foxcraft Products Corp. (hereinafter Foxcraft) was a corporation organized on April 30, 1957, having its principal place of business in Huntingdon Valley, Pa. It was an active operating company engaged in the business of distributing automobile parts and accessories. It maintained its books of account on an accrual fiscal year basis ending April 30 and filed its Federal income tax return for the taxable period involved herein with the district director of internal revenue at Philadelphia, Pa.

The following schedule sets forth the names of the shareholders (hereinafter referred to collectively as shareholders) of Foxcraft and Philmont and the percentage of their stock interest in Foxcraft and Philmont:

| | Percent of interest in Foxcraft | Percent of interest in Philmont |
|---|---|---|
| Jack Finkle | 23.20 | 25.00 |
| Beatrice Finkle Trust [1] | 6.80 | 0 |
| Jule Finkle | 23.20 | 25.00 |
| Bella Finkle Trust [1] | 6.80 | 0 |
| Maurice Finkle | 18.20 | 25.00 |
| Gertrude Finkle Trust [1] | 6.80 | 0 |
| Arthur Finkle | 11.00 | 18.42 |
| Ruth Finkle Trust [1] | 4.00 | 6.58 |
| | 100.00 | 100.00 |

[1] Wife of stockholder whose name appears immediately above her name.

On or before July 1, 1963, Philmont acquired 100 percent of the stock of another corporation, which it liquidated within 2 years of such acquisition, transferring the assets to petitioner in exchange for the latter's stock. As a result, Philmont became the sole shareholder of petitioner.

On November 27, 1964, petitioner's board of directors adopted a resolution providing for the dissolution and complete liquidation of the corporation, which subsequently occurred on January 29, 1965. The resolution recited that the liquidation was being effected "in accordance with, to the extent that they may be applicable, Sections 332, 334(b)(2) and 337(a) of the Internal Revenue Code of 1954." A Form 966 was filed on or about December 5, 1964.

On November 27, 1964, Philmont and Foxcraft, by their boards of directors, each adopted a resolution providing for their dissolution and complete liquidation, which subsequently occurred on January 29, 1965. The resolutions recited that the liquidations were being effected

"in accordance with the requirements of Section 337(a) of the Internal Revenue Code of 1954." Each corporation filed a Form 966 on or about December 5, 1964.

On December 7, 1964, petitioner, Philmont, and Foxcraft entered into an agreement (hereinafter referred to as the agreement) with Gulf & Western Industries, Inc., providing for the sale to one or more subsidiaries of Gulf & Western (hereinafter referred to collectively as Gulf & Western) of all the assets, properties, and business of petitioner, Philmont, and Foxcraft, with the exception of the stock of petitioner owned by Philmont. The agreement appointed Jack Finkle as the representative of the sellers, which designation was confirmed by an agreement dated January 29, 1965, among petitioner, Philmont, Foxcraft, and the shareholders of the latter two corporations. The latter agreement contained the following provisions:

2. Shareholders each hereby designate Representative as their irrevocable agent and attorney-in-fact, to receive, on their behalf from Sellers, as a liquidating dividend, through himself as Representative of Sellers, the Agreement and any and all rights accruing therefrom, *and all other assets of Sellers*, subject to the liabilities of Sellers under the terms of said Agreement, and any other liabilities of Sellers, liquidated or contingent.

3. Upon approval of this Agreement by the respective Boards of Directors of Sellers, and the adoption by them of appropriate resolutions declaring that the Agreement and all rights accruing therefrom held by Representative, on behalf of Sellers, be paid and distributed, as a liquidating dividend, to Representative, as irrevocable agent for the Shareholders under this agreement, (and with respect to Kamis's rights under the Agreement, and all of its other assets, subject to its liabilities, received by Philmont as a liquidating dividend of Kamis, the further transfer of such assets and rights, subject to the liabilities of Kamis, to the Representative as agent for the Shareholders except Philmont), in the proportions hereinafter designated, subject to all remaining liabilities of Sellers, whether under the Agreement or otherwise, and whether liquidated or contingent, which liabilities Shareholders except Philmont hereby assume and agree to pay in the proportions hereinafter designated, Representative shall, and he hereby does acknowledge that thereafter he shall hold all funds received by him under the Agreement, as agent for the Shareholders except Philmont, under the terms of this Agreement, subject as aforesaid.

\*         \*         \*         \*         \*         \*         \*

5. Upon and after the execution of this agreement, \* \* \* all funds received and held by Representative under the Agreement or this agreement shall be deemed to be received by him for the account of, and as agent for, the Shareholders except Philmont, in the following proportions:

A. 60.89% thereof for the Shareholders of Foxcraft in the proportions of their respective shareholdings in Foxcraft, as shown on Exhibit "A" annexed hereto and made a part hereof;

B. 39.11% thereof for the Shareholders of Philmont in the proportions of their respective shareholdings in Philmont, as shown on Exhibit "B" annexed hereto and made a part hereof; it being understood that the above percentage includes Kamis's portion of the proceeds due and rights under the Agreement, which proceeds and rights have, by this agreement, and resolutions of the Directors of Kamis and Philmont, been successively distributed as liquidating dividends to their respective Shareholders, resulting in all rights of Kamis and

Philmont under the Agreement, *and all other assets thereof,* subject to all liabilities in said companies, *being vested in the Shareholders of Philmont* in the proportion listed on Exhibit "B".

[Emphasis supplied.]

Also on January 29, 1965, Philmont, Foxcraft, and petitioner each executed assignments of all of its assets to Jack Finkle "in consideration of the delivery to the corporate Assignor for cancellation by all of its shareholders of all of its capital stock in complete redemption thereof in furtherance of its Plan of Complete Liquidation heretofore adopted."

On the same day, the transfers to Gulf & Western were effected in exchange for payments by Gulf & Western to Jack Finkle as representative.

Section 337 provides, in subsection (a), that if a corporation adopts a plan of complete liquidation and distributes all of its assets within a 12-month period, "then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period." The section was enacted to overcome the difficulties engendered by the Supreme Court decisions in *Commissioner* v. *Court Holding Co.,* 324 U.S. 331 (1945), and *United States* v. *Cumberland Pub. Serv. Co.,* 338 U.S. 451 (1950), and had as its avowed objective the elimination of "questions arising as a result of the necessity of determining whether a corporation in the process of complete liquidation made a sale of assets or whether the shareholder receiving the assets made the sale." See S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 48–49 (1954). See also *J. C. Penney Co.* v. *Commissioner,* 312 F. 2d 65 (C.A. 2, 1962), affirming 37 T.C. 1013 (1962), and *United States Holding Co.,* 44 T.C. 323 (1965), for a full elucidation of the purposes of section 337.

It is clear that petitioner satisfied all of the requirements of section 337 (a) and (b). Thus, if our inquiry could stop here, it would be clear that, except with respect to gain attributable to section 1245 assets which petitioner concedes to be taxable, petitioner would recognize no gain or loss on the sale of its assets to Gulf & Western. But section 337(c) (2) provides an exception to the general rule of nonrecognition contained in section 337 "In the case of a sale or exchange following the adoption of a plan of complete liquidation, if section 332 [3]

---

[3] SEC. 332. COMPLETE LIQUIDATIONS OF SUBSIDIARIES.

(a) GENERAL RULE.—No gain or loss shall be recognized on the receipt by a corporation of property distributed in complete liquidation of another corporation.

(b) LIQUIDATIONS TO WHICH SECTION APPLIES.—For purposes of subsection (a), a distribution shall be considered to be in complete liquidation only if—

> (1) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 percent of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends) ; * * *

applies." Since Philmont was the owner of all the issued and outstanding stock of petitioner, the parties have locked horns on whether the exception applies, respondent asserting that it does and petitioner contending that it does not.[4] The issue is one of first impression for this Court. Cf. *Manilow* v. *United States*, 315 F. Supp. 28 (N.D. Ill. 1970).

In resolving this issue, it is essential that both the overall purpose of section 337 and the specific purpose of the exception contained in section 337(c)(2) be kept clearly in mind. The overall purpose was to eliminate the minefield[5] created by *Commissioner* v. *Court Holding Co., supra,* and *United States* v. *Cumberland Pub. Serv. Co., supra,* by imposing only one tax where a combination of a corporation liquidation and a sale of assets occurs. See *J. C. Penney Co.* v. *Commissioner, supra* at 70; *United States Holding Co., supra* at 331. The specific purpose of the exception was to assure the same result and not to permit the avoidance of tax at *both* the parent and subsidiary levels, where the parent remained in existence, which would be the consequence if both section 337(a) and section 332 applied. See *United States Holding Co., supra.*

In the instant case, one tax was clearly payable by the shareholders who ultimately received the total proceeds of the sale of the assets of all three corporations to Gulf & Western. The question is whether, as respondent contends, an additional tax should be paid by petitioner on the theory that the proceeds of the sale of its assets were constructively received by Philmont in complete liquidation of its wholly owned subsidiary and then distributed in liquidation by Philmont to its shareholders.[6]

The parameters of the issue before us are clearly defined by two examples. If Philmont had not been liquidated, the exception contained in section 337(c)(2) would apply and petitioner would be taxable on the gain from the sale of its assets to Gulf & Western. If it is determined that, prior to the sale, Philmont distributed to its shareholders its stock in petitioner, section 332 would not apply, since Philmont would not have continued to own such stock "at all times until the receipt of the property [the distribution in liquidation of petitioner]"[7] and petitioner would be relieved of taxation on such gain by virtue of section 337(a).

---

[4] Respondent agrees that if the exception applies, petitioner's gain should be computed in accordance with sec. 337(c)(2)(B), and the parties have stipulated the amount of that gain. Compare XIX A.B.A. Bulletin of the Section of Taxation, No. 3, p. 87 (April 1966).

[5] Vestigial booby traps still remain. Cf. *Waltham Netoco Theatres, Inc.,* 49 T.C. 399 (1968), affd. 401 F.2d 333 (C.A. 1, 1968); Rev. Rul. 69–172, 1969–1 C.B. 99.

[6] Respondent cannot and does not contend that Philmont and Foxcraft are not entitled to the benefit of sec. 337(a).

[7] Cf. *Commissioner* v. *Day & Zimmermann,* 151 F.2d 517 (C.A. 3, 1945); *Avco Manufacturing Corporation,* 25 T.C. 975, 979 (1956); Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, p. 11–30 fn. 51 (3d ed. 1971).

We think that an analysis of the facts reveals that, as of the time of the closing of the transaction with Gulf & Western, Philmont had distributed its shares in petitioner to Jack Finkle as representative of the shareholders of Philmont. To be sure, the precise sequence of the transactions relating to the designation of Finkle as representative, the closing of the sales to Gulf & Western, and the transfer of the proceeds to Finkle in cancellation of the stock of Philmont, Foxcraft, and petitioner is not revealed by the record. But it is established that they all took place on the same day and in all probability simultaneously. In resisting a claimed loss by a corporation where the plan of liquidation and sale occurred on the same day, respondent has sought and obtained a confirmation of his interpretation of section 337 that the exact sequence of events should be disregarded. *Henry H. Adams*, 38 T.C. 549 (1962) ; sec. 1.337–1, Income Tax Regs. We see no reason not to adopt an equally felicitous interpretation here. By the same token, we think it reasonable to conclude that, even if Philmont's shares in petitioner should not be considered as having been transferred to Philmont's shareholders prior to the distribution of the proceeds, the instruments of designation of Finkle and of assignment effectively transferred the right to receive the proceeds of the sale of petitioner's assets to Philmont's shareholders. In such event, Philmont would not be considered as having been in "receipt * * * of property distributed" and section 332 would not apply.

Concededly, there is language in the agreement designating Finkle which seems to operate in terms of a dual distribution, first from petitioner to Philmont and then from Philmont to its shareholders. Additionally, the resolution of petitioner by which its plan of liquidation was adopted referred to sections 332 and 334(b)(2) as well as section 337, but it is significant that such reference was qualified by the phrase "to the extent that they may be applicable." But we think that these peripheral indicia should not be accorded the substantive significance advocated by respondent, particularly in light of the fact that the instrument of assignment from Philmont to its shareholders in consideration of the cancellation of its stock specifically transferred "all of the assets of the corporate Assignor," which assets included the stock of petitioner. It is equally as logical to say that there was a constructive distribution of either Philmont's stock in petitioner or the proceeds of the sale of petitioner's assets to the shareholders of Philmont as it is to say that there was a constructive distribution of such proceeds by petitioner to Philmont. In short, we think that the constructive receipt theory begs the question.

Respondent claims that *Manilow* v. *United States, supra*, heavily relied upon by petitioner, is distinguishable on its facts. Technically, respondent may be correct, since the parent corporation in that case

appears to have lacked substance, but the District Court went beyond that factual nuance and stated (315 F. Supp. at 34) :

The transaction in question substantially deviates from a "normal" Section 337(c)(2) parent-subsidiary liquidation. The gain realized was channeled directly and immediately to the plaintiffs, who in turn recognized their consequent tax liability at the shareholder level. To levy a double tax upon the plaintiffs because of the *form* and not the substance of the liquidation of the Water Company would be to ignore the express legislative intent of Congress. The approach advocated by the defendant traps the plaintiffs into double taxation because of the form they unwarily took in effectuating a complete corporate liquidation.

The message of *Manilow* is loud and clear and we agree with it.

Respondent also points to the recommendations of the Subchapter C Advisory Group (Revised Report on Corporate Distributions and Adjustments, 86th Cong., 1st Sess., p. 55 (Dec. 11, 1958), and Report on Corporate Distributions and Adjustments, 85th Cong., 2d Sess., p. 45 (Dec. 24, 1957)). Those recommendations, however, covered the entire gamut of subchapter C and, even in the area of the applicability of section 337 to liquidations of both parent and subsidiary, urged expansion of the nonrecognition of gain or loss beyond the situation where, as is the case here, there are *simultaneous* liquidations. We therefore derive no indication of legislative intent from the failure of the Congress to adopt such recommendations.

The exclusionary provision of section 337(c)(2) represents a legislative shield of the revenue against the avoidance of tax at both the parent and subsidiary levels, where the proceeds from the sale of the subsidiary's assets are distributed to the parent in a section 332 liquidation and remain in corporate solution. It should not be turned into a legislative sword to justify the imposition of tax at both the subsidiary level and that of the shareholders of the parent, where the proceeds of the sale of the subsidiary's assets find their way forthwith into the hands of such shareholders. In short, we are satisfied that, in a case such as this, we should not be blinded by questions of technical niceties so as to thwart the intendment of the statute. See *Cherry-Burrell Corp.* v. *United States*, 367 F. 2d 669, 672 (C.A. 8, 1966). Our conclusion that section 332 is not applicable where a simultaneous liquidation of both the parent and subsidiary is involved (cf. *International Investment Corp.*, 11 T.C. 678, 685 (1948), affirmed per curiam 175 F. 2d 772 (C.A. 3, 1949)), enables the respondent to extract one tax but not two and accords with both the overall objective of section 337 and the specific objective of section 337(c)(2). *Manilow* v. *United States, supra.*

Reviewed by the Court.

*Decisions will be entered under Rule 50.*