SAM W. KLEIN AND LA DONNA KLEIN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 630–76.     Filed November 26, 1980.

*Jeffry L. Weiler, Robert C. Coplan, Martin J. Mehall,* for the petitioners.
*Buckley D. Sowards, William D. Brackett,* and *John P. Graham,* for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency in petitioners' income tax of $26,782.29 for 1972. After concessions, the sole issue to be decided is the extent to which distributions in the course of a complete liquidation of an electing subchapter S corporation reduce a shareholder/creditor's basis in the corpora-

tion for computing his net operating loss deduction limitation defined in section 1374(c)(2).[1]

This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure.

At the time the petition was filed, petitioners were married and resided in Boca Raton, Fla. Their joint Federal income tax return for 1972 was timely filed with the Internal Revenue Service Center, Cincinnati, Ohio.

Sam Klein was a shareholder and creditor of Midwest Fisheries, Inc. (hereinafter Midwest), an Ohio corporation which had a valid election to be treated as a small business corporation (subchapter S), in effect for the period in issue. By resolution dated April 6, 1972, the shareholders and directors of Midwest agreed to its complete liquidation, to be completed by April 5, 1973. On August 12, 1972, Midwest sold some of its assets to State Fish, Inc., for $250,000 plus the assumption of certain trade liabilities. The purchase price was to be paid in annual installments of $50,000 beginning August 12, 1973, and was evidenced by a promissory note bearing interest at the rate of 4 percent per year.

On December 29, 1972, Midwest completed its liquidation by filing a certificate of dissolution with the Ohio secretary of state and distributing its remaining assets, including the State Fish, Inc., note, to its shareholders/creditors.[2] Midwest's last taxable year began February 1, 1972, and between that date and December 29, 1972, Midwest sustained a net operating loss of $361,952.80.[3] As of December 29, 1972, Sam Klein had a basis in his Midwest stock of $40,762.78 and a basis of $309,327.72 in Midwest notes payable.

The dispute in this case arises because Midwest was an electing small business corporation (see sec. 1371 et seq.) and, therefore, not subject to the usual rules of corporate taxation. Sec. 1372(a). Shareholders of a subchapter S corporation, much

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in issue, except where otherwise indicated.

[2]Two distinct assignments of assets were made by Midwest to its shareholder/creditors. The State Fish, Inc., note was distributed to them in respect of their debt interests, and the remaining assets were distributed to them in respect of their stock. Sam Klein received a share in the State Fish, Inc., note worth $236,850.

[3]The parties agree that Sam Klein's share of this loss is $234,446.76. See sec. 1374(c)(1).

like partners in a partnership, must include in their gross income the undistributed taxable income of their corporation (sec. 1373), and may deduct as a trade or business expense their shares of its net operating loss, if any. Sec. 1374. See generally B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, par. 6.01 et seq. (4th ed 1979). Two important limitations, however, work in tandem to ensure that a shareholder may not deduct a corporate net operating loss in excess of his investment: section 1374(c)(2) limits a shareholder's loss to the basis of his investment in the corporation (which includes both stock and debt), and section 1376(b) reduces that basis by the amount of any such loss recognized by the shareholder.

The dispute herein involves the order of application of Midwest's net operating loss and the distributions made in complete liquidation insofar as Sam Klein is concerned. Petitioners contend that Sam Klein's share of the net operating loss should first be applied to his basis in the stock and Midwest's indebtedness to him, thereby giving him the benefit of his full share of such loss. Respondent counters with the argument that the amount received should first be applied to the indebtedness of Midwest in Sam Klein's favor and that such application carries a reduction of $236,850 in the basis of Midwest's indebtedness to him, with the result that $121,206.26[4] of Midwest's net operating loss slipped through his fingers seconds before that loss solidified into a tax deduction. Expressed in the vernacular, the issue before us is, which comes first— the chicken or the egg?

At the outset, we reject respondent's contention that we should look to Ohio law to resolve the question before us. We think that his reliance on Ohio Rev. Code Ann. sections 1701.88(D) and 1701.95 (Page 1978) is misplaced. A close reading of those sections reveals that a director may, in fact, authorize a distribution to shareholders before satisfying creditors so long as he "adequately provid[es] for the payment of all known obligations of the corporation." Ohio Rev. Code Ann. sec. 1701.88(D) (Page 1978). Moreover, even if the distribution to shareholders is improper, these sections apparently do not invalidate it but

---

[4]This amount is arrived at as follows: $40,762.78 (basis in stock) plus $309,327.72 (basis in indebtedness) minus $236,850 produces a net basis of $113,240.50. Subtracting this figure from $234,446.76 (see n. 3 *supra*) produces $121,206.26.

merely impose personal liability upon the directors. Ohio Rev. Code Ann. sec. 1701.95(A) (Page 1978).

Human limitations being what they are, it is almost impossible to effectuate all the incidents of a single corporate liquidation with perfect simultaneity. The record does not disclose the precise sequence of events, but it does establish that the distribution to Sam Klein qua creditor and the distribution to him qua shareholder occurred on the same day, in all probability at almost the same time, and were intended to be two parts of a single plan of complete liquidation. We have upheld respondent's regulation providing in the context of section 337 liquidations that timing niceties should not be decisive (*Adams v. Commissioner*, 38 T.C. 549 (1962); sec. 1.337-1, Income Tax Regs.), and we have held that, in determining the tax consequences of an intercorporate liquidation, "the exact sequence of events should be disregarded." *Kamis Engineering Co. v. Commissioner*, 60 T.C. 763, 768 (1973).[5] Tax law is often concerned with details, but it does not belabor trifles. We conclude that Sam Klein should be treated as if the two distributions had been made at exactly the same moment and that, consequently, we must look beyond the clock for the rule of decision in this case.

Given the fact that neither the statute nor the legislative history nor respondent's regulations give us any precise guidance,[6] we look to a solution which best dovetails the provisions of subchapter S, in light of the legislative purposes which underlie

---

[5]Congress has embodied the rationale of *Kamis Engineering* in sec. 337(c)(3), effective with respect to plans of complete liquidation adopted after Dec. 31, 1975. See sec. 2118(a), Pub. L. 94–455, 90 Stat. 1912, as corrected by a technical amendment (see sec. 701(i), Pub. L. 95–600, 92 Stat. 2904–2905). The Senate Finance Committee report accompanying the inclusion of this provision states that "The committee believes that, consistent with the underlying purpose of section 337, the sequence of formal steps taken by the parties in this type of situation should not determine what tax results occur." See S. Rept. 94–938, 1976–3 C.B. (Vol. 3) 470. See also Joint Committee Explanation, 1976–3 C.B. (Vol. 2) 644.

[6]Midwest's taxable year ended on the day the distributions in complete liquidation were made. Sec. 443(a)(2). Under these circumstances, we think no inference should be drawn from the fact that where a taxpayer disposes of his stock (a situation which occurred herein, see sec. 331), sec. 1374(c)(2)(A) provides that his basis in his stock is computed as of the day before such disposition, while sec. 1374(c)(2)(B) provides that the basis of his indebtedness is to be computed as of the close of the day on which he ceased to be a shareholder. Both of these provisions are alternatives to making the computation as of the close of the corporation's taxable year, and the 1-day hiatus under sec. 1374(c)(2)(A) was undoubtedly designed to avoid the possible contention that the disposition of the stock caused a termination of shareholder status, thereby depriving the taxpayer of the necessary foundation for claiming a share of the corporation's net operating loss.

such provisions, with the more general provisions of chapter 1 of the Internal Revenue Code. Cf. *Mason v. Commissioner*, 68 T.C. 163 (1977), affd. per curiam 646 F.2d 1309 (9th Cir. 1980); *Kamis Engineering Co. v. Commissioner, supra.*

In our recent case of *Abdalla v. Commissioner*, 69 T.C. 697 (1978), affd. 647 F.2d 487 (5th Cir. 1981), we addressed an issue similar to that involved herein. In that case, the taxpayer was a shareholder in two electing small business corporations which were adjudicated bankrupt. We held that the adjudication of bankruptcy should be treated as a disposition of stock within the meaning of section 1374—the complete liquidation of Midwest performs the same role here, see section 331—and held that the taxpayer was entitled to his share of a net operating loss deduction up to the point of time that his indebtedness and stock became worthless and was not required first to reduce the basis of his equity and indebtedness before taking the net operating loss into account. 69 T.C. at 704-705. Although *Abdalla* technically may be distinguishable (the precise timing question posed herein was not discussed), we think that the thrust of our analysis in that case mandates that we should follow its lead and conclude that petitioners should prevail herein. There are a number of other considerations which strengthen this conclusion.

First, if petitioner had been a shareholder of Midwest but not its creditor, section 1374 would clearly require that petitioner's basis be computed *before* any reduction occasioned by the distribution. Sec. 1374(c)(2)(A). We do not believe that Congress intended to discriminate between simple shareholders and shareholder/creditors. To the contrary, a shareholder/creditor's basis for determining his net operating loss deduction is defined to be the sum of his equity and debt investments in the corporation. Sec. 1374(c)(2). We see no reason to rend asunder the aggregation of debt and equity which Congress has seen fit to join together. In passing, we note that an opposite conclusion might well introduce into subchapter S the debt/equity characterization quagmire which sparked the enactment of section 385, a result which would be unfortunate, to say the least.

Second, we note that allowing petitioners to deduct Sam Klein's full share of Midwest's net operating loss without regard to its liquidating distributions comports well with the rationale which motivated the subchapter S legislation. Congress sought

to allow a small business corporation to be taxed much like a partnership so that "businesses [can] select the form of business organization desired, without the necessity of taking into account major differences in tax consequence." S. Rept. 1983, 85th Cong., 2d Sess. 87 (1958), 1958–3 C.B. 1008. To be sure, there are differences between the rules of subchapter K and those of subchapter S, differences which were intended and must be respected. *Frankel v. Commissioner*, 61 T.C. 343, 347 (1973), affd. without opinion 506 F.2d 1051 (3d Cir. 1974); see 7 J. Mertens, Law of Federal Income Taxation, sec. 41B.01 (1976). However, the clear import of section 1374 is that, except as limited by subsection (c)(2), the net operating loss of an electing small business corporation flows through to, and is treated as a loss incurred in a trade or business of, the corporation's shareholders, just as if the shareholders ran the business as a proprietorship. See B. Bittker & J. Eustice, *supra*, par. 6.07 at 6–32; cf. sec. 735.

But for the limitation of section 1374(c)(2), the present controversy would not arise. That limitation is one of the "at risk" limitations appearing throughout the Code (compare, e.g., secs. 465 and 704(d) as now in effect) designed to ensure that a taxpayer should not be able to deduct a loss in excess of that which he actually bears. In subchapter S, the "at risk" limitation denies a shareholder the net operating loss flow-through in excess of his investment in the corporation (sec. 1374(c)(2)) in recognition that the corporate shield protects him from sustaining a financial loss beyond this amount.

It is not disputed that Midwest did in fact suffer a substantial net operating loss during its last taxable year, nor that Sam Klein had invested in Midwest more than the amount of his full share of that loss as defined by section 1374. Consequently, the "at risk" policy behind section 1374(c)(2) is not served by denying petitioners the deduction in this case.

Third and last, it seems that respondent is trying to catch a capital fish within his ordinary net.[7] The clear thrust of section 1374 is that the net operating loss of an electing small business

---

[7] Petitioners' theory of the case yields a deduction against ordinary income of $234,446.76 and a capital gain of $121,206.26. Converting $121,206.26 of the deduction to capital loss, and then offsetting it against the capital gain, leaves a deduction of $113,240.50, precisely respondent's figure.

corporation is denied to the corporation because it is given to the shareholders—a deduction against ordinary income is taken from the one, but is given to the others. On the other hand, respondent does not deny that the gain or loss realized by a creditor/shareholder on the disposition of his investment in a small business corporation is capital in nature. See secs. 1221 and 1232. To the extent that Sam Klein's investment has been lost to operating expenses, petitioners should be entitled to an ordinary loss. Sec. 1374. To the extent that the disposition of Sam Klein's investment produces a gain or loss, it is capital. Secs. 1221 and 1232. Our holding harmonizes these sections.[8] See *Abdalla v. Commissioner, supra;* cf. *Fribourg Nav. Co. v. Commissioner,* 383 U.S. 272 (1966); *Crane v. Commissioner,* 331 U.S. 1, 13 (1947). See generally *Easson v. Commissioner,* 33 T.C. 963, 967–968 (1960), revd. and remanded 294 F.2d 653 (9th Cir. 1961).

*Decision will be entered under Rule 155.*

---

[8]See *Holbrook v. Commissioner,* T.C. Memo. 1975–294.