BEAR MILL MANUFACTURING COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20730. Promulgated November 24, 1950.

704

William O. Robertson, Esq., for the petitioner.
John J. Madden, Esq., for the respondent.

OPINION.

BLACK, *Judge:* The only question in this proceeding is whether the amount of $22,228.17 received by petitioner in 1945 represents a recovery of a bad debt within the meaning of section 22 (b) (12), Internal Revenue Code.[2]

[2] SEC. 22. GROSS INCOME.

\* \* \* \* \* \* \*

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\* \* \* \* \* \* \*

(12) RECOVERY OF BAD DEBTS, PRIOR TAXES, AND DELINQUENCY AMOUNTS.—Income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount. For the purposes of this paragraph:

    (A) Definition of Bad Debt.—The term "bad debt" means a debt on account of worthlessness or partial worthlessness of which a deduction was allowed for a prior taxable year.

\* \* \* \* \* \* \*

    (D) Definition of Recovery Exclusion.—The term "recovery exclusion," with respect to a bad debt, prior tax, or delinquency amount, means the amount, determined in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, of the deductions or credits allowed, on account of such bad debt, prior tax, or delinquency amount, which did not result in a reduction of the taxpayer's tax under this chapter (not including the tax under section 102) or corresponding provisions of prior revenue laws, reduced by the amount excludible in previous taxable years with respect to such debt, tax or amount under this paragraph.

In its return for the calendar year 1930, petitioner deducted the amount of $22,228.17 as a bad debt loss, which loss resulted from the bankruptcy of one of its customers, Mico Curtain Co. This deduction did not result in any tax benefit to petitioner, for even without this deduction petitioner showed a net loss for 1930. We think it is clear that when in 1945 Robbins paid to petitioner the $22,228.17 in question, petitioner recovered the bad debt of that amount which it had charged off as worthless against Mico Curtain Co. in 1930. It seems to us that under the circumstances of the case this $22,228.17 was a bad debt recovery exclusion within the meaning of section 22 (b) (12) (D), I. R. C., and that the Commissioner erred in holding that it represented ordinary income to petitioner. It seems perfectly clear that if petitioner had received a tax benefit deduction in 1930 when it charged off this bad debt in 1930, it would have been income to it in 1945 when it recovered the $22,228.17 from Robbins, and doubtless the Commissioner would have so determined.

In *Excelsior Printing Co.*, 16 B. T. A. 886, the taxpayer previously charged off a bad debt in the amount of $7,900. Thereafter and over a period of 3 years it received from the trustee under the will of the sole stockholder of the debtor corporation repayment of the amount so charged off. Of this sum, $4,900 was received in 1923. In that year the taxpayer corporation did not include this sum in its income tax return, claiming that it represented a gift from the deceased stockholder of the old corporation, Philipsborn Outer Garment House, Inc., a bankrupt. The respondent contended, however, that the amount received in 1923 was, in fact, a collection upon a bad debt previously charged off, and that it was taxable to the corporate taxpayer in that year to the extent that the prior chargeoff had resulted in a tax advantage. The Board of Tax Appeals held that the deceased stockholder did not intend to make a gift to the taxpayer, but that he intended to pay the old debt, although he was not legally required so to do, and chose the medium of a bequest under his will as the method for carrying out this intent. The Board of Tax Appeals held that in accepting the money the taxpayer accepted it for the purpose which the deceased stockholder had intended, namely, the payment of a debt, and as such, it constituted a recovery of a debt which had been previously charged off.

The facts in the instant case, we think, are similar in effect to the facts in the *Excelsior Printing Co.* case, *supra*. We have the positive testimony from Robbins that the sum of $22,228.17 was paid by him to the petitioner for the purpose of discharging the old debt of Mico Curtain Co. We have the positive testimony of Morris Poley for the petitioner that the sum of $22,228.17 was received from Robbins for

that purpose and was so treated by the corporation on its books. Why should it be treated otherwise? We see no reason why it should be. It is perfectly true that there was no legal obligation on the part of Robbins to pay this debt for the reason it was the debt of the old corporation, but there was none on the part of Philipsborn to pay the debt of Philipsborn Outer Garment House, Inc., bankrupt in the *Excelsior Printing Co.* case. The debtor corporation in that case had gone into bankruptcy and had been discharged as had the debtor corporation in the instant case, but notwithstanding that fact, we held the debt continued to exist. On that point we said:

In the case of *Zevalo* v. *Reeves*, 227 U. S. 625, the Supreme Court held that a discharge in bankruptcy destroys the remedy but not the indebtedness.

In the instant proceeding, therefore, the debt to the petitioner continued in existence. We have no doubt that Philipsborn did not intend to make a gift to the petitioner. He intended to pay the debts of the corporation. As far as appears from the record Philipsborn was under no legal obligation to pay such debts.

Just so, in the instant case, Robbins intended to pay the debt of the old corporation, although he was under no legal obligation to do so. He testified to that effect at the hearing and we see no reason to doubt his testimony.

Respondent in his brief stresses the fact that the reason that Robbins agreed to pay, and did pay, this old indebtedness of the Mico Curtain Co. was in order to be able to purchase certain textile goods from petitioner which were in scarce supply and which Robbins badly needed. That seems to be a fair inference from the facts but we do not see where it has any significance in deciding the question we have here to decide. Regardless of the motive which prompted Robbins to pay the old debt, he did in fact pay it and by reason of his paying it petitioner recovered a bad debt which it had long since charged off and considered lost. Under the facts which are not in dispute, this debt was charged off in 1930 and allowed by the Commissioner without any tax advantage occurring to petitioner. That makes it a bad debt recovery exclusion under section 22 (b) (12) (D), I. R. C. On this issue, the only one in the case, we reverse the Commissioner and sustain the petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

DISNEY, *J.*, concurs only in the result.