# NASH ET AL. v. UNITED STATES

No. 678. Argued April 21, 1970—Decided May 18, 1970

2

*Harold I. Apolinsky* argued the cause for petitioners. With him on the brief were *Joseph S. Bluestein* and *Alex W. Newton.*

*Matthew J. Zinn* argued the cause for the United States. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Walters, Gilbert E. Andrews,* and *Stuart A. Smith.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioners were partners operating eight finance offices in Alabama. The partnership reported its income on the accrual method of accounting and instead of deducting bad debts within the taxable year as permitted by § 166 (a) of the Internal Revenue Code of 1954 it used the reserve method of accounting as permitted by § 166 (c). Under the reserve method of accounting a taxpayer includes in his income the full face amount of a receivable on its creation and adjusts at the end of each taxable year the reserve account so that it equals that portion of current accounts receivable that is estimated to become worthless in subsequent years. Any additions necessary to increase the reserve are currently deductible. When an account receivable becomes worthless during the year, the reserve account is decreased and no additional bad debt deduction is allowed. As of May 31, 1960, the partnership books showed accounts receivable of $486,853.69 and a reserve for bad debts of $73,028.05.

On June 1, 1960, petitioners formed eight new corporations and transferred the assets of the eight partner-

ship offices, including the accounts receivable, to the corporations in exchange for shares of the corporations—a transfer that concededly provided no gain or loss under § 351 of the Code.

The Commissioner determined that the partnership should have included in income the amount of the bad debt reserve ($73,028.05) applicable to the accounts receivable that had been transferred. Tax deficiencies were computed; and petitioners, having paid them, brought this suit for refunds. The District Court allowed recovery and the Court of Appeals reversed, 414 F. 2d 627. We granted the petition for certiorari to resolve the conflict between the Fifth and the Ninth Circuits[1] on this question of law. 396 U. S. 1000. We share the view of the Ninth Circuit and reverse the present judgment.

There is no provision of the Code that deals precisely with this question. But the Commissioner's basic premise[2] rests on the so-called tax benefit rule, viz., that a recovery of an item that has produced an income tax benefit in a prior year is to be added to income in the year of recovery.[3] The Commissioner argues that that rule, applicable here, means that unused amounts in a bad debt reserve must be restored to income when the reserve is found to be no longer necessary, as it was here, when the partnership's "need" for the reserve ended with the termination of its business. Congress could make the end of "need" synonymous with "recovery" in the meaning of the tax benefit rule and make

[1] Estate of Schmidt v. Commissioner, 355 F. 2d 111.

[2] See Rev. Rul. 62–128, 1962–2 Cum. Bull. 139.

[3] Section 111 (a) of the 1954 Code provides:

"Gross income does not include income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount."

the rule read: "[A] bad debt reserve that has produced an income tax benefit in a prior year is to be added to income in the year when it was recovered or when its need is ended." The semantics would then be honored by the Commissioner's ruling. But we do not feel free to state the tax benefit rule in those terms in the present context. We deal with § 351 (a) of the Code which provides:

> "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control . . . of the corporation."

All that petitioners received from the corporations were securities equal in value to the net worth of the accounts transferred, that is the face value less the amount of the reserve for bad debts. If, as conceded, there is no "gain" or "loss" recognized as a result of the transaction, it seems anomalous to treat the bad debt reserve as "income" to the transferor.[4]

Deduction of the reserve from the face amount of the receivables transferred conforms to the reality of the transaction, as the risk of noncollection was on the transferee. Since the reserve for purposes of this case was deemed to be reasonable and the value of the stock received upon the transfer was equal to the *net value* of the receivables, there does not seem to us to have been any "recovery." A tax benefit was received by the

---

[4] As stated in *Geyer, Cornell & Newell, Inc.* v. *Commissioner*, 6 T. C. 96, 100: "A reserve consists of entries upon books of account. It is neither an asset nor a liability. It has no existence except upon the books, and, unlike an asset or a liability, it can not be transferred to any other entity."

partnership when the bad debt reserve was originally taken as a deduction from income. There would be a double benefit to the partnership if securities were issued covering the face amount of the receivables. We do not, however, understand how there can be a "recovery" of the benefit of the bad debt reserve when the receivables are transferred less the reserve.[5] That merely perpetuates the status quo and does not tinker with it for any double benefit out of the bad debt reserve.

For these reasons, the Court of Appeals in the *Schmidt* case[6] held that although the "need" for the reserve ended with the transfer, the end of that need did not mark a "recovery" within the meaning of the tax benefit cases, 355 F. 2d, at 113. We agree and accordingly reverse the judgment below.

*Reversed.*

MR. JUSTICE BLACK and MR. JUSTICE STEWART, dissenting.

We agree with the reasoning of Judge Tuttle's opinion for the Court of Appeals in this case, 414 F. 2d 627, and with Judge Raum's opinion for the Tax Court in *Schuster v. Commissioner,* 50 T. C. 98. Accordingly, we would affirm the judgment.

---

[5] "[T]he infirmities in the accounts receivable which justify the bad debt reserve carry over to those accounts in the hands of the corporation. Presumably the amount that will ultimately be collected by the corporation will not be the gross amount of the receivables, but rather the net amount after deducting the bad debt reserve. Thus, the stock received in exchange for such accounts receivable can only be worth what the receivables themselves are worth, namely, the net collectable amount rather than the gross amount." Arent, Reallocation of Income and Expenses in Connection with Formation and Liquidation of Corporations, 40 Taxes 995, 998 (1962).

[6] N. 1, *supra.*