MERCHANTS INDUSTRIAL BANK, a corporation organized and existing under the laws of the State of Colorado, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 72-1397.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 10, 1973.

Decided March 20, 1973.

Richard R. Helmick, Denver, Colo. (Helmick, Conover & Burkhardt and H. Edward Kluver, Denver, Colo., on the brief), for petitioner-appellant.

Richard Halberstein, Atty., Tax Div., Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and Bruce I. Kogan, Attys., Tax Div., Dept. of Justice, on the brief), for respondent-appellee.

Before BREITENSTEIN, McWILLIAMS, and BARRETT, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In this appeal from the Tax Court, the petitioner-appellant Merchants Industrial Bank contends that the Commissioner of Internal Revenue improperly disallowed portions of the taxpayer's additions to a reserve for bad debts in each of the years 1965, 1966, and 1967. The Tax Court sustained the Commissioner. T.C.Memo.1972-18.

Taxpayer is a bank which makes high-risk loans to persons whose credit does not qualify them for loans from the usual commercial banks. Because of the risk, it charges an average of 20% simple interest per annum. Loans are made for periods of six months to five years with approximately 42% of the dollar amount represented by five-year loans. About half of the loans are secured by second or third real estate mortgages and the other half either secured by chattel mortgages or unsecured.

Stated in terms of percentage of loans outstanding at the end of each year, the taxpayer's net loss was: 1965—1.0%; 1966—1.1%; 1967—1.3%. In its brief taxpayer says that its claimed deductions for additions to a reserve for bad

debts "totalled slightly less than the total net bad debts actually charged off" during the years in issue. The Commissioner allowed such additions in the amount of .8% of the taxpayer's outstanding loans for each pertinent year. This resulted in deficiency assessments of $361.59 for 1965, $279.98 for 1966, and $3,968.96 for 1967.

Section 166(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 166(a), permits an income tax deduction of "any debt which becomes worthless within the taxable year." Section 166(c) provides that

> "In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts."

The reserve method of taking bad debt deductions has been a part of the revenue laws since 1921. See 42 Stat. 227, § 234(a)(5). Historically, the treatment of a bank's bad debt reserves has been subject to various administrative pronouncements and policies. Under Mimeograph 6209, 1947-2 Cum.Bull. 26, banks were administratively permitted to establish bad debt reserves at three times their average annual loss experience. See First National Bank in Olney v. Commissioner, 7 Cir., 368 F.2d 164, 165-166. In 1965, Rev.Rul. 65-92, 1965-1 Cum.Bull. 112, established a uniform reserve ratio, which was codified by the Tax Reform Act of 1969 as § 585 of the Internal Revenue Code. Rev.Rul. 65-92 is important to the consideration of the instant case.

 The bad debt reserve method permits taxpayers to defer taxes on income in amounts of reasonable additions to the reserve each year, but such deferrals are justified under § 166(c) only when the Commissioner is satisfied that such reserve additions are reasonable. A taxpayer attacking the Commissioner's determination that bad debt reserve additions are excessive has the burden of establishing that the additions were

reasonable and that the denial of the additions was an abuse of discretion. Business Development Corporation of North Carolina v. United States, 4 Cir., 428 F.2d 451, 453, cert. denied 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265, and United States v. Haskel Engineering & Supply Co., 9 Cir., 380 F.2d 786, 789. By electing to use the bad debt reserve method the taxpayer subjects himself to the reasonable discretion of the Commissioner. American State Bank v. United States, 7 Cir., 279 F.2d 585, 589, cert. denied 364 U.S. 881, 81 S.Ct. 170, 5 L. Ed.2d 103. Before discussing Rev.Rul. 65-92, we note that revenue rulings do not have the force and effect of law but are for the information and guidance of taxpayers, IRS officials, and others concerned, and though entitled to consideration, they are accorded less weight than regulations. United States v. Eddy Brothers, Inc., 8 Cir., 291 F.2d 529, 531.

Sections 3, 4, and 5 of Rev.Rul. 65-92 establish a uniform reserve ratio and allow additions to the reserve until the reserve "equals 2.4% of loans outstanding at the close of the taxable year." Section 6 reads:

> "Notwithstanding the provisions of sections 4 and 5 of this ruling, the addition to the reserve that a bank will be permitted in a taxable year through the use of the uniform reserve ratio shall not exceed an amount equal to 0.8 percent of the loans outstanding at the end of the taxable year, or an amount sufficient to bring the reserve to 0.8 percent of loans outstanding at the end of the taxable year, whichever amount is greater."

For the years in question the taxpayer's bad debt reserve, stated in percentages of loans outstanding at the end of the taxable year, was: 1965—2.9%; 1966—3.0%; 1967—2.9%. The Commissioner limited the allowable deductions to .8% of the outstanding loans. The taxpayer claims the right to make a reserve addition in the amount of the actual bad debt loss for each year which varied from 1.0% to 1.3%.

The taxpayer contends that a bank which has a 1.0% or greater bad debt loss and which is allowed only a .8% addition to the reserve must inevitably suffer a diminution of the reserve. The Commissioner points out that § 6 of Rev.Rul. 65–92 permits an annual reserve addition of an amount sufficient to bring the reserve to .8% of the outstanding loans. This provides a floor of .8% for the reserve.

Taxpayer urges that this method discriminates against high loss banks and favors commercial banks whose annual loss runs about .2% by permitting the commercial banks to have a 2.4% reserve whereas the high risk bank, in a succession of years when the loss factor is greater than .8% may find itself with a total reserve of only .8%. This result is possible. However, the record shows no invidious discrimination in fact, and we are not concerned with the appropriateness of Rev.Rul. 65–92 but rather with the validity of the specific actions of the Commissioner in disallowing the claimed additions to the reserve.

The taxpayer is critical of the statement of the Tax Court that the inquiry is "whether at the end of the year the reserve is sufficient to absorb the bad debts anticipated during the subsequent taxable year." The applicability of such a principle to the taxpayer which has 42% of the dollar amount of its loans for five-year periods is difficult to justify. Indeed, in his brief the Commissioner takes an ambivalent position. At one point he says that the annual adjustment of the reserve balance must "correctly reflect that portion of the debt reasonably estimated to become worthless in subsequent years." At another point he says that the question is whether the balance is "sufficient to absorb the bad debts that are anticipated during the subsequent taxable year." In Nash v. United States, 398 U.S. 1, 2, 90 S.Ct. 1550, 26 L.Ed.2d 1, the Supreme Court refers to the reserve method of accounting permitted by § 166(c) and says that the year-end adjustment equals that portion of the receivables "estimated to become worthless in subsequent years." The use of the plural rejects the concept that the adjustment takes into consideration only the next taxable year.

We are not here concerned with the wisdom or propriety of § 6, Rev.Rul. 65–92. Our question is whether the Commissioner abused his discretion in determining that the additions claimed by the taxpayer were not reasonable. The taxpayer says that the Commissioner's interpretation of Rev.Rul. 65–92 flies directly in the face of Treasury Regulation § 1.166–4(b) which says:

"What constitutes a reasonable addition to a reserve for bad debts shall be determined in the light of the facts existing at the close of the taxable year of the proposed addition. The reasonableness of the addition will vary as between classes of business and with conditions of business prosperity. It will depend primarily upon the total amount of debts outstanding as of the close of the taxable year, including those arising currently as well as those arising in prior taxable years, and the total amount of the existing reserve."

This listing of factors to be considered in determining reasonableness is helpful but not determinative of the validity of the Commissioner's action. The taxpayer is entitled under the statute to a reserve for bad debts and may make reasonable additions thereto. Rev.Rul. 65–92 permits a reserve of 2.4% of the net outstanding loans. During the years in question the percentage of the taxpayer's bad debt reserve to net loans outstanding varied from 2.9% to 3.0%, thus exceeding the 2.4% prescribed by Rev.Rul. 65–92. We find nothing in the record to establish that the taxpayer needed a greater reserve. It may be that in the future the Treas. Reg. 1.166–4(b) factors will justify a higher reserve but we are concerned with the record presented, not with speculations over the future.

We take § 6, Rev.Rul. 65–92, as advisory only. The issue is whether, in using the formula which it recognizes, the Commissioner wrongfully held that the additions to the reserve were unreasonable and so abused his discretion. See Patterson v. Pizitz, Inc., 5 Cir., 353 F.2d 267, 268–269, cert. denied 383 U.S. 910, 86 S.Ct. 895, 15 L.Ed.2d 666; Krim-Ko Corp., 16 T.C. 31, 37. On the record presented we find no abuse of discretion. If future developments result in an inadequacy of the uniform reserve provisions of §§ 3, 4, 5, and 6, Rev.Rul. 65–92, to provide the reasonable addition to a reserve for bad debts permitted by § 166(c) of the 1954 Code, the taxpayer has the alternative of using the probable experience method outlined in § 7, Rev.Rul. 65–92.

Affirmed.