TENNESSEE CAROLINA TRANSPORTATION, INC., PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3963-73.     Filed December 1, 1975.

*H. Stennis Little, Jr.,* for the petitioner.
*Richard J. Neubauer,* for the respondent.

OPINION

*Issue 1*

The liquidation of Service was a complete liquidation of a subsidiary within the meaning of sections 332 and 334(b)(2).[2] Therefore petitioner's basis in the various assets which it received must be determined by allocating petitioner's adjusted basis in its Service stock among them in proportion to their relative fair market values on the date of distribution, March 1, 1967. Sec. 1.334-1(c)(4)(viii), Income Tax Regs.

For the purpose of applying section 1.334-1(c)(4)(viii), *supra,* petitioner valued the terminal at $150,000. Respondent determined that on the date it was distributed to petitioner the fair market value of the terminal was less than $100,000. The burden of proving respondent's determination incorrect is on petitioner. *Welch v. Helvering,* 290 U.S. 111 (1933).

After the terminal was vacated by Service on January 22, 1967, it was of no further usefulness to petitioner. Petitioner's objective was therefore to sell the terminal as quickly as possible. With this objective in mind, petitioner's real estate agent recommended that the property be listed for sale at $150,000. Shortly after the terminal was listed, it was seriously damaged by trespassers. Windows were broken; plumbing and electric wiring were disarranged; and fire extinguishers were sprayed throughout

[2] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

the premises. These wanton acts discouraged prospective purchasers from becoming interested in the property, and during the 7 months in which the terminal remained listed for sale at $150,000, not a single offer of purchase was forthcoming.

As time passed, the need to sell the property became more urgent. Petitioner was in need of the cash that a sale would provide and could ill afford to bear the expense of maintaining so useless an asset as the terminal. Therefore when petitioner was offered $100,000 for the terminal by an unrelated party, an agreement was concluded on the basis of that offer.

Ordinarily, the price at which property is sold in an arm's-length transaction is the best evidence of its fair market value at the time of the sale. *T. H. Symington & Son, Inc.,* 35 B.T.A. 711, 756 (1937). Petitioner, however, contends that in this instance the sale of the property was dictated by economic necessity and that, consequently, there was inadequate opportunity to negotiate a fair price. Under such circumstances, the price agreed upon might not have been respresentative of the fair market value of the property. See *Bell's Booteries, Inc. v. United States,* 91 F. Supp. 155 (M.D. Tenn. 1948).

In the 7 months during which the property was available for sale at $150,000, it was inspected by five or six prospective purchasers. In its damaged condition the property was of interest to none of them at that price. Certainly this indicates that the asking price was well in excess of the fair market value of the property in its damaged condition. Furthermore, when the offer of $100,000 was made, petitioner's real estate agent deemed it well worth accepting. Given these facts, we are satisfied that the value of the selling price as evidence of the fair market value of the terminal has not been impugned because petitioner may have felt compelled by a need for cash to accept the offer of $100,000.

Some incidents of vandalism occurred before the terminal was distributed to petitioner in liquidation; others occurred thereafter. The initial acts of vandalism which occurred before the distribution must have had an adverse effect upon the fair market value of the terminal because of the alterations which they effected in the appearance of the property. Not to be gainsaid, however, is the effect of the damage which was wrought upon the terminal after it was distributed to petitioner. Therefore in determining the fair market value of the property as of the date of distribution, respondent ought not to have

presupposed that when the terminal was sold on August 31, 1967, it was worth no less than it had been on the date of distribution 6 months before.

The extent to which the terminal was damaged after it was distributed was not precisely established at trial. We have therefore to approximate as best we can the extent to which the fair market value of the terminal declined between the date of distribution and the date of sale. Upon due consideration of all the pertinent facts we estimate the amount of the decline to have been $25,000. *Cohan v. Commissioner,* 39 F.2d 540, 543-544 (2d Cir. 1930). Accordingly, we hold that on March 1, 1967, the fair market value of the terminal was $125,000.

When Service purchased tires and tubes to be mounted on equipment used in its operations, it expensed the cost of procuring them when they were placed in service. The cost of tires and tubes purchased on new equipment was expensed at the time of the purchase. These costs were charged to expense rather than capitalized on the assumption that the average useful life of the tires and tubes was 1 year or less.

When Service was liquidated, it distributed to petitioner 1,638 tires and tubes, the cost of which it had previously expensed. For the purpose of applying section 1.334-1(c)(4)(viii), *supra,* petitioner valued these tires and tubes at $94,940.

During 1966, the last full year of its operations, Service charged $53,918.03 (net) to expense in respect of tires and tubes. In view of this, respondent determined that the value assigned by petitioner to the 1,638 tires and tubes was excessive.

There is nothing in the record to indicate that the cost of tires and tubes increased significantly between the time when Service purchased the tires and tubes whose cost it charged to expense in 1966, and the date on which it was liquidated. On the date of Service's liquidation, 67.5 percent of the useful life of the 1,638 tires and tubes remained. We would therefore be inclined to hold that on the liquidation of Service the fair market value of these tires and tubes was $36,394.67, *Colonial Fabrics v. Commissioner,* 202 F.2d 105 (2d Cir. 1953), affg. a Memorandum Opinion of this Court, cert. denied 346 U.S. 814 (1953), unless, as petitioner contends, the average useful life of the tires and tubes which it received was substantially in excess of 1 year when Service put them into use. This possibility is belied by the testi-

mony of Service's former tire serviceman to the effect that most tires and tubes have a useful life of approximately 1 year.

We therefore hold that on March 1, 1967, the fair market value of the tires and tubes in question was $36,394.67.[3]

## Issue 2

If the useful life of items purchased for use in the production of income is sufficiently brief that the cost of procuring them may be expensed,[4] then ordinarily their cost is expensible in a taxable year to the extent the items are actually consumed in operations during that year. *Spiegal, May, Stern Co. v. United States,* 37 F.2d 988 (Ct. Cl. 1930). A taxpayer engaged in the motor freight transportation business may, however, expense the cost of tires and tubes purchased for use in its operations before they are consumed, provided the average useful life of the tires and tubes is 1 year or less. See Rev. Rul. 59-249, 1959-2 C.B. 55; Rev. Rul. 73-357, 1973-2 C.B. 40.

Certain of the tires and tubes whose cost Service expensed were not fully consumed in its operations. Rather they were distributed by Service in liquidation when a substantial portion of their useful life had not been exhausted. We must decide if Service recognized income on the distribution of these tires and tubes under the tax benefit rule. We have not addressed ourselves to this issue previously. See *Estate of David B. Munter,* 63 T.C. 663, 677 (1975).

The tax benefit rule provides that an item properly offset against gross income in determining 1 year's tax liability is includable in gross income when it is recovered in a subsequent year. *Alice Phelan Sullivan Corp. v. United States,* 381 F.2d 399, 401-402 (Ct. Cl. 1967). Before proceeding to consider whether the rule is applicable in the case now before us we note that so far as can be ascertained from the record, the costs incurred by Service in procuring the tires and tubes which it distributed in liquidation were offset against Service's gross income in determining its tax liability.[5]

---

[3] All outstanding issues of fair market value having been resolved, petitioner's basis in the various assets which it received on the liquidation of Service may be computed under Rule 155, Tax Court Rules of Practice and Procedure.

Respondent concedes that petitioner is entitled to deduct on the consolidated return filed for 1967 the basis allocated to the tires and tubes.

[4] See sec. 1.446-1(a)(4)(ii), Income Tax Regs.

[5] Certainly the burden of proving the contrary would be upon petitioner. *Welch v.*

Relying on *Commissioner v. South Lake Farms, Inc.,* 324 F.2d 837, 839-840 (9th Cir. 1963), affg. 36 T.C. 1027 (1961), petitioner contends that Service made no recovery in respect of the tires and tubes which it distributed in liquidation because *in actuality* it neither received nor became entitled to receive money or property in exchange for them; and that therefore the tax benefit rule is inapplicable in this instance.[6]

In our opinion the understanding of "recovery" upon which the decision of the United States Court of Appeals for the Ninth Circuit in *South Lake Farms, Inc.,* rests is unduly restrictive. It is well established, for example, that an item of expenditure that has been properly accrued but not paid is deemed to be recovered when liability for the item terminates. *Bear Manufacturing Co. v. United States,* 430 F.2d 152 (7th Cir. 1970), cert. denied 400 U.S. 1021 (1971); *Mayfair Minerals, Inc.,* 56 T.C. 82 (1971), affd. per curiam 456 F.2d 622 (5th Cir. 1972). This leads us to conclude that for purposes of the tax benefit rule, a taxpayer may have recovered an item previously expensed although *actually* he has neither received nor become entitled to receive money or property. See *Estate of William H. Block,* 39 B.T.A. 338, 341 (1939), affd. sub nom. *Union Trust Co. v. Commissioner,* 111 F.2d 60 (7th Cir. 1940).

Service was permitted to expense the cost of the tires and tubes which it purchased, on the assumption that their useful life would be fully exhausted in its operations. Once Service had expensed their cost, the tires and tubes were therefore deemed to have been fully consumed in its operations for purposes of Federal income taxation whatever their fair market value may have been. If, having expensed the cost of the tires and tubes Service subsequently treated them as property having a fair market value in a transaction of consequence in the scheme of Federal income taxation, it would therefore necessarily be deemed to have received tires and tubes identical to them immediately prior to that transaction. *Anders v. United States,* 462 F.2d 1147, 1149 (Ct. Cl. 1972), cert. denied 409 U.S. 1064 (1972); *Spitalny v. United States,* 430 F.2d 195, 197-198 (9th Cir. 1970).

*Helvering,* 290 U.S. 111 (1933).

[6] In deciding *South Lake Farms, Inc.,* 36 T.C. 1027 (1961), this Court did not address itself to the issue of whether there had been a recovery for purposes of the tax benefit rule. That issue was dealt with only by the United States Court of Appeals for the Ninth Circuit; and it is on the decision of that court that petitioner relies.

When Service was liquidated, among the property which it distributed to petitioner, its sole shareholder, were tires and tubes having a fair market value of $36,394.67. Service had previously expensed the cost of these items. It must therefore be deemed to have received immediately prior to its liquidation, tires and tubes equal in value to those which it distributed.

Service's receipt of tires and tubes which is deemed to have occurred for purposes of Federal income taxation, was occasioned by its distribution of property in liquidation. Section 336 provides that a corporation shall not recognize gain or loss on the distribution of property in liquidation. The receipt of the tires and tubes, however, is an event of independent significance for purposes of Federal income taxation and is therefore not subject to section 336. *Hempt Bros., Inc. v. United States,* 490 F.2d 1172, 1180 (3d Cir. 1974).

We therefore hold that under the tax benefit rule Service had to include in gross income on its liquidation the lesser of the fair market value of the tires and tubes which it distributed or the portion of their cost attributable to their useful life remaining at the time of the distribution. *Spitalny v. United States, supra* at 198; *Alice Phelan Sullivan Corp. v. United States, supra.*

There is no indication in the record of significant fluctuation in the cost of tires and tubes. In this instance, therefore, the portion of the cost of the tires and tubes attributable to their remaining useful life is equal to their fair market value at the time of the distribution, $36,394.67, and it is that amount which Service had to include in gross income on its liquidation.[7]

At this juncture we would take note of the decision of the Supreme Court in *Nash v. United States,* 398 U.S. 1 (1970).

Petitioner contends that under *Nash* an accrual basis corporate taxpayer which provides for bad debt losses with respect to its accounts receivable by maintaining a reserve account would not be required under the tax benefit rule to include the reserve in gross income if it distributed the receivables in liquidation; and that by analogy we are precluded by *Nash* from applying the tax benefit rule in the case now before us.

---

[7] Our holding pertains solely to the distribution in liquidation of property whose cost has previously been expensed. We point this out to preclude inapposite analogies to the distribution in liquidation of fully depreciated property. *Commissioner v. Anders,* 414 F.2d 1283, 1288 (10th Cir. 1969), revg. 48 T.C. 815 (1967), cert. denied 396 U.S. 958 (1969). See also the concurring opinion of Judge Tannenwald in *Estate of David B. Munter,* 63 T.C. 663, 679-680 (1975).

In so contending petitioner fails to perceive that *Nash* presupposes that the fair market value of the receivables distributed equals their net worth, i.e., their face value less the amount in the reserve for bad debt; and that the case now before us is better analogized to the situation in which the fair market value of the receivables exceeds their net worth. *Nash* implies that in the latter case the reserve would be includable in the gross income of the liquidating corporation to the extent the fair market value of the receivables exceeded their net worth. See 398 U.S. at 4-5. See also *Citizens' Acceptance Corp. v. United States,* 462 F.2d 751, 756-757 (3d Cir. 1972). Our holding in the case now before us is therefore wholly consistent with *Nash.*

*Decision will be entered under Rule 155.*

Reviewed by the Court.

SIMPSON, *J.,* concurring: Although I agree with the Court's conclusions in this case, I wish to emphasize that there was a "recovery" in this case because the liquidation was of the type described in section 334(b)(2) and was part of a plan for the acquisition of the assets of Service.

Section 334(b)(2) provides that under certain circumstances, the parent corporation's adjusted basis in the stock of its subsidiary is substituted as the basis of the property received from the subsidiary in a section 332 liquidation. The parent is treated as though it had purchased the subsidiary's assets instead of its stock. S. Rept. No. 1622, 83d Cong., 2d Sess. 257 (1954); see *Kimbell-Diamond Milling Co.,* 14 T.C. 74, 80 (1950), affd. per curiam 187 F.2d 718 (5th Cir. 1951), cert. denied 342 U.S. 827 (1951). Under such circumstances, I agree that Service "recovered" a deduction previously taken.

By our holding in this case, we are expressing no position concerning the tax consequences when property is distributed in other types of liquidations.

TANNENWALD, *J.,* dissenting: I disagree with the majority's application of the tax benefit rule to the facts presented herein on the simple ground that there was no recovery within the meaning of the third prong of that rule which I set forth in my concurring

opinion in *Estate of David B. Munter,* 63 T.C. 663, 679 (1975): "(1) An amount previously deducted, (2) which resulted in a tax benefit, and (3) was *recovered* during the taxable year in issue." (Emphasis added.) The majority rests its decision on the fiction that petitioner "must * * * be deemed to have received immediately prior to its liquidation, tires and tubes equal in value to those which it distributed." In other words, the act of disposition itself becomes the equivalent of receipt of the property disposed of, without any corresponding present benefit. I had thought that the use of fictions as a basis for applying the tax benefit rule had been abandoned. *Nash v. United States,* 398 U.S. 1 (1970). Compare *John T. Stewart III Trust,* 63 T.C. 682 (1975). See also *Estate of David B. Munter,* 63 T.C. at 680 (concurring opinion).

In every case cited by the majority, in which the tax benefit rule has been applied, there was a present economic benefit, either by way of an actual receipt of funds or a release of a liability resulting in an increase in the taxpayer's net worth. In both *Bear Manufacturing Co. v. United States,* 430 F.2d 152 (7th Cir. 1970), and *Mayfair Minerals, Inc.,* 56 T.C. 82 (1971), affd. per curiam 456 F.2d 622 (5th Cir. 1972), the taxpayer gave recognition in the taxable year to the termination of a liability, which had formed the basis of a deduction in a prior year, by transferring the amount of the liability to surplus, i.e., increasing its net worth. This act of transfer, which made "the money which the [previous] accruals represented * * * available for its general use" (see *Mayfair Minerals, Inc.,* 56 T.C. at 87), was held to be the taxable event, i.e., there was a present economic benefit.[1]

The only apparent source of authority for a broader reading of the word "recovery" is *Estate of William H. Block,* 39 B.T.A. 338, 341 (1939), affd. sub nom. *Union Trust Co. v. Commissioner,* 111 F.2d 60 (7th Cir. 1940), wherein it was said:

> Income tax liability must be determined for annual periods on the basis of facts as they existed in each period. When recovery or *some other event which is inconsistent with what has been done in the past* occurs, adjustment must be made in reporting income for the year in which the change occurs. [Emphasis added.]

---

[1] It should be noted that the expensing of the tires and tubes in previous years in and of itself created no asset or liability which was capable of transfer or whose disposition would have affected the petitioners' net worth. Cf. *Nash v. United States,* 398 U.S. 1, n. 4 (1970); *Argus, Inc.,* 45 T.C. 63, 69-70 (1965).

Since that case involved an actual recovery in the form of a receipt by the taxpayer of a "refund of the taxes which formed a basis for deductions from its income in prior years," 39 B.T.A. at 340, the above-emphasized portion of the Board's opinion is clearly dictum. Moreover, the Board's language can be read to embrace those situations where there was no recovery in the sense of an actual receipt of funds by the taxpayer but where there was an "event" which could be equated with recovery such as the termination of a liability, thereby increasing net worth, such as occurred in *Mayfair Minerals, Inc., supra.*

To the extent that the majority reads the language of *Block* to sanction the application of the tax benefit rule where the only event is the cessation of need for the prior deduction, its approach is directly contrary to that taken in *Nash v. United States, supra,* where the Supreme Court categorically rejected the concept that the "end of 'need' [was] synonymous with 'recovery' in the meaning of the tax benefit rule." See 398 U.S. at 3. Indeed, the majority recognizes the difficulty presented by *Nash* and attempts to distinguish that holding on the ground that the Supreme Court indicated the possibility of applying the tax benefit rule where the fair market value of the property received by the taxpayer exceeds the adjusted basis of the property given up and the taxpayer had obtained a tax benefit from the prior deduction of all or part of the original cost. But, such a distinction assumes the critical factor, namely, that there was a recovery, i.e., that the taxpayer received something. In distinguishing *Nash,* the Court of Appeals in *Citizens' Acceptance Corp. v. United States,* 462 F.2d 751, 756-757 (3d Cir. 1972), cited by the majority to support its rationalization of *Nash,* emphasized this very factor. See also *Bishop v. United States,* 324 F.Supp. 1105, 1111-1112 (M.D. Ga. 1971). Unlike the receipt of cash or other property or the release from a liability, a liquidating distribution does not cause a corporate taxpayer to realize any economic benefit. Petitioner herein received only its own stock in return for the distributed property; the value of such stock upon the corporation's cessation of business and distribution of property is nil. See *Commissioner v. South Lake Farms, Inc.,* 324 F.2d 837, 839 (9th Cir. 1963). See also O'Hare, "Statutory Nonrecognition of Income and the Overriding Principle of the Tax Benefit Rule in the Taxation of

Corporations and Shareholders," 27 Tax L. Rev. 215, 233-236 (1972).

Two aspects of the instant situation obviously influenced the majority in reaching their conclusion: (1) The feeling that, unless the tax benefit rule is applied, petitioner will have the equivalent of a double deduction and (2) the need to have parity between the applications of sections 336 and 337,[2] a problem which I dealt with extensively in my concurring opinions in *Estate of David B. Munter, supra,* and *John T. Stewart III Trust, supra.*

As to the first aspect, since the petitioner realized nothing upon its own liquidation, it cannot be said to have enjoyed any "double deduction." Compare *Bishop v. United States, supra,* where, absent the tax benefit rule, a corporation would have twice enjoyed tax benefits where it had realized, but had not recognized, gain from section 337 liquidation sales of inventory and where the cost of the items sold had been deducted from income in previous years under the farm-price inventory method of accounting. See also *United States v. Skelly Oil Co.,* 394 U.S. 678, 684 (1969); *Winer v. Commissioner,* 371 F.2d 684, 686 (1st Cir. 1967).

To the extent that there is a double deduction herein, it arises from the fact that the distributee corporation appears entitled to expense its stepped-up basis in the tires and tubes. But any advantage to the distributee corporation by reason of a section 334(b)(2) stepped-up basis cannot be charged to the distributor-liquidating corporation. The provisions of section 334(b)(2) merely prescribe the basis of property in the distributee's hands; that they treat the parent as though it has purchased the assets of the subsidiary does not mean that they alter the tax consequences of a liquidation pursuant to other statutory sections, e.g., by imputing a sale of the property to the liquidated corporation. See *Supreme Investment Corp. v. United States,* 468 F.2d 370 (5th Cir. 1972); *Bijou Park Properties, Inc.,* 47 T.C. 207, 214 (1966); see also Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 11.44 (3d ed. 1975) (automatic operation of sec. 334(b)(2)). The tax benefit rule does not require one taxpayer to assume a tax liability for benefits

---

[2] It should be noted that the taxability of the corporation is determined under secs. 336 and 337, whether the liquidation is taxable or tax free to the recipients under secs. 331 through 333.

accruing to another taxpayer. *Commissioner v. South Lake Farms, Inc., supra.* Cf. *Peter Pan Seafoods, Inc. v. United States,* 417 F.2d 670 (9th Cir. 1969).

As far as parity between sections 336 and 337 is concerned, the courts have thus far refrained from embracing any absolute rule. See *Commissioner v. South Lake Farms, Inc.,* 324 F.2d at 839; *John T. Stewart III Trust,* 63 T.C. at 693; *Estate of David B. Munter,* 63 T.C. at 677. Moreover, it has been pointed out that complete parity between these two sections can never exist because of specific limitations contained in section 337. See *Midland-Ross Corp., Tr. of Sur. Com. Corp. v. United States,* 485 F.2d 110, 117-118 (6th Cir. 1973). See also Bittker & Eustice, *supra,* par. 11.65. It cannot be gainsaid that section 337 was enacted to eliminate the judicially created formalisms which made tax consequences turn on a determination whether a corporation in the process of liquidation or its shareholders made the sale of the assets. See S. Rept. No. 1622, 83d Cong., 2d Sess. 48-49 (1954); H. Rept. No. 1337, 83d Cong., 2d Sess. 38-39 (1954). By way of contrast, section 336 represented a legislative confirmation of the longstanding judicial doctrine that a corporation generally does not realize income from a distribution of its assets in kind to its shareholders. See S. Rept. No. 1622, *supra* at 46; H. Rept. No. 1337, *supra* at 37-38. Cf. *General Utilities & Operating Co. v. Helvering,* 296 U.S. 200 (1935). But it does not follow from the fact that section 337 was intended generally to relieve the liquidating corporation of taxability on any gain from the sale of its assets that Congress intended to impose a tax liability (which would not otherwise have been incurred) upon a corporation liquidating in kind under section 336, simply because such liability would have been realized upon a sale of assets otherwise qualifying for nonrecognition under section 337. Section 337 was designed to be a shield for taxpayers and not a sword to be used against them in applying other sections of the Code. I am not unmindful of the fact that there may be a trap for the unwary to the extent that a dichotomy develops between the two sections. But, as I see it, this inheres in the statutory and judicial structure. Compare *Waltham Netoco Theatres, Inc.,* 49 T.C. 399 (1968), affd. 401 F.2d 333 (1st Cir. 1968).

In analyzing the issue before us, I think it is of some significance that the recapture of depreciation deductions which

Congress has seen fit to impose in corporate liquidations (see sec. 1245 and sec. 1.1245-4(c), Income Tax Regs.) does not compel recovery of expensed items under like circumstances. In fact, it appears that section 1245 does not extend to expensed as distinguished from depreciable property, cf. *Coca-Cola Bottling Co. of Baltimore v. United States,* 487 F.2d 528 (Ct. Cl. 1973), a position which is in accord with the concept that a deduction for ordinary and necessary business expenses is not the same animal as a deduction allowed for depreciation. See *Pittsburgh Athletic Co.,* 27 B.T.A. 1074 (1933), affd. 72 F.2d 883 (3d Cir. 1934).[3]

If we are to be guided by legislative expression, let it be by section 111, the statutory tax benefit rule. This provision excludes from gross income the amount of a prior deduction later recovered to the extent the earlier deduction did not result in a tax benefit. This provision requires an actual economic recovery and its thrust in terms of the tax benefit rule is one of limitation; it was enacted to "harness the 'benefit theory' to a standard formula which could be applied with reasonable uniformity." See 1 Mertens, Law of Federal Income Taxation, sec. 7.34, n. 38 (Malone rev. 1974).[4] To permit the word "recovery" to take on Procrustean attributes would clearly not serve this purpose.

In sum, I simply cannot find that element of "recovery" herein which the application of the tax benefit rule demands. Similarly, I cannot bring myself to dispense with the "recovery" requirement (or alternatively to find a fictional "recovery") in order to apply that rule and impute a taxable event to a corporate liquidation in kind under circumstances where such taxability has heretofore not been considered to exist. In this connection, it is interesting to note that this Court, in the past, has refused to activate "the abstract notion of tax benefit" to require a taxpayer to include in income gratuitously canceled interest on his indebtedness, notwithstanding the fact that such taxpayer had accrued and deducted such interest in prior years. *Hartland Associates,* 54 T.C. 1580, 1586 (1970).

To the extent that petitioner expensed tires and tubes purchased in the year of liquidation, an adjustment should be made in petitioner's deductions for that year under section 446(b).

---

[3] Compare sec. 1.162-3, Income Tax Regs., with secs. 1.263(a)-1 and 1.263(a)-2, Income Tax Regs. See generally *Welch v. Helvering,* 290 U.S. 111, 113 (1933).
[4] See also H. Rept. No. 2333, to accompany H.R. 7378 (Pub. L. No. 753), 77th Cong., 2d Sess. 45, 69-71 (1942).

*Spitalny v. United States,* 430 F.2d 195, 198 (9th Cir. 1970); *Estate of David B. Munter,* 63 T.C. at 682 (concurring opinion).

DRENNEN, IRWIN, STERRETT, QUEALY, GOFFE, and HALL, *JJ.,* agree with this dissent.