SIDNEY W. ROSEN AND LORRAINE S. ROSEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5590–77.    Filed November 21, 1978.

*Nestor M. Nicholas,* for the petitioners.
*John O. Tannenbaum,* for the respondent.

## OPINION

RAUM, *Judge:* The Commissioner determined deficiencies in petitioners' Federal income tax as follows:

| Year | Deficiency |
|------|-----------|
| 1973 | $28,682.31 |
| 1974 | 30,191.42 |

Petitioners made gifts of property to charities in 1972 and 1973, and claimed charitable contributions deductions in respect thereof. Subsequently, in 1973 and 1974, the property was returned to them by the donees, and the principal issue presented is whether petitioners must include in their gross income, in those 2 years, the value of the returned property. The case was submitted without trial on the basis of a stipulation of facts.

Petitioners Sidney W. Rosen and Lorraine S. Rosen, husband and wife, resided in Fall River, Mass., at the time their petition herein was filed. They filed their joint Federal income tax returns for the years 1973 and 1974 with the Director, Internal Revenue Service Center, Andover, Mass.

Prior to December 20, 1972, petitioners were the owners of the land and buildings located on the southeasterly corner of High Street and Walnut Street, Fall River, Mass. (hereinafter the property). The property consisted of approximately 8,010 square feet of land on which was situated a three-story frame house containing five apartments and a two-car garage. On December 20, 1972, petitioners made a gift of the property to the city of Fall River, Mass. (the city), which accepted the gift at the time it was made. The value of the property, at the time the petitioners donated it to the city, was $51,250. As a result of the gift, the petitioners were entitled to a charitable contribution deduction, in the amount of $51,250, on their joint 1972 Federal income tax return.[1]

The gift to the city was made without any restrictions as to the use of the property and without imposing any obligations of any nature on the city. At the time the gift was accepted by the mayor of the city, the city officials contemplated using the property in connection with the city school department. The city council, however, argued that the school department budget was already excessive and that there was little reason to increase the budget by accepting property which would have to be adapted for school department use. The dispute between the city council

---

[1] There is no indication in the record that such deduction was not taken or that it was disallowed in any part by the Commissioner.

and the mayor remained unresolved until April 1973, at which time it was agreed by the mayor and the city council that the property would be returned to the petitioners. Although the city was under no obligation whatsoever, legal or otherwise, to return the property to the petitioners, the property was transferred to the petitioners by the city on April 30, 1973.[2]

On June 20, 1973, the petitioners made a gift of the property, less a small portion retained for themselves, to the Union Hospital, Fall River, Mass. (the hospital). The value of the property transferred to the hospital by the petitioners, at the date of transfer, was $48,000, and the petitioners claimed and were allowed a charitable contribution deduction of that amount in respect of the gift of the property.[3]

The transfer by the petitioners to the hospital was made without any restrictions as to the use of the property and without imposing any obligation of any nature on the hospital. In 1974, the hospital found itself in financial difficulty and was unable to make use of the property. In addition, the building forming part of the property had remained vacant since its receipt by the hospital, and substantial damage had been done to the building by the weather and vandals. The building had deteriorated to the point where the board of trustees of the hospital felt it was becoming a liability and, accordingly, they voted on August 27, 1974, to transfer the property back to the petitioners without consideration.[4] The hospital was under no

---

[2]The order of the city council in respect of the return of the property stated the following:

"ORDERED, that the Mayor be and he is hereby authorized to convey for no consideration to Sidney W. Rosen and Lorraine A. Rosen, the property located at the southeasterly corner of High and Walnut Streets, and be it further

"ORDERED, that this conveyance shall be subject to the restrictions that said Sidney W. Rosen and Lorraine A. Rosen reimburse the City of Fall River for all expenses incurred by the city for said property and assume liability for all outstanding bills or expenses for said property."

The deed conveying the property to petitioners recited that the transfer was a gift, and that there was no monetary consideration by the Rosens.

[3]The $48,000 figure was stipulated by the parties. However, petitioners' 1973 return, which the parties have also stipulated, discloses that a total deduction of $49,740 was claimed, consisting of $48,000 for the real estate plus $1,740 for items of personal property located in the building, such as refrigerators, draperies, carpeting, and the like. No explanation of this discrepancy has been offered by petitioners.

[4]The minutes of the board of trustees meeting state that the board voted "To return to Dr. and Mrs. Rosen the property on the southeast corner of High and Walnut Streets." The deed reconveying the property to petitioners and the certificate of the clerk of the hospital recorded with the deed both contained a recital that the purpose of the conveyance without consideration was to correct a "mistake of fact."

obligation, legal or otherwise, to return the property to the petitioners.

The parties have stipulated that the value of the property, at the time it was transferred to the petitioners by the hospital, was $25,000. In 1974, subsequent to the receipt of the property by the petitioners from the hospital, the petitioners expended $5,000 to demolish the building on the property.

The Commissioner determined that petitioners must include in gross income, on account of the return of the property to them by the city and later by the hospital, $52,990 in 1973 and $49,740 in 1974. The Commissioner now concedes that only $51,250 and $25,000 must be included in petitioners' gross income in 1973 and 1974, respectively, in respect of the return of the property by the city and the hospital. The petitioners claim, however, that they need include no amounts in their gross income in respect of the return of the property by either the city or the hospital. The Commissioner has not challenged the bona fides of any of the transactions, and the only question is whether petitioners must include in their gross income, in the years of the retransfers from the city and the hospital, the fair market value of the property returned. We hold that they are required to do so.

It has long been established that the receipt of money or property which might not otherwise be regarded as income may nevertheless constitute income within the meaning of the statute (section 61, I.R.C. 1954, and corresponding provisions of prior law) if it represents the repayment, restoration, or return of an item which the taxpayer had deducted in an earlier year. The general concept has often been referred to as the "tax benefit rule."[5]

The tax benefit rule has widespread applicability to a variety of different receipts. See 1 J. Mertens, Law of Federal Income Taxation, secs. 7.34–7.37(2) (1974 rev.). Familiar examples appear in cases involving the recovery of a bad debt which had been deducted on the returns of a prior year, e.g., *Askin &*

---

[5]The rationale for the rule was set forth in *Estate of Block v. Commissioner*, 39 B.T.A. 338, 341, affirmed sub nom. *Union Trust Co. v. Commissioner*, 111 F.2d 60 (7th Cir.), certiorari denied 311 U.S. 658:

"Income tax liability must be determined for annual periods on the basis of facts as they existed in each period. When recovery or some other event which is inconsistent with what has been done in the past occurs, adjustment must be made in reporting income for the year in which the change occurs."

See also *Alice Phelan Sullivan Corp. v. Commissioner*, 381 F.2d 399, 402 n. 2 (Ct. Cl.).

*Marine Co. v. Commissioner*, 66 F.2d 776 (2d Cir.); *Putnam Nat. Bank v. Commissioner*, 50 F.2d 158 (5th Cir.); and in cases where excises or other taxes paid and deducted from gross income in a prior year are refunded in a later year, e.g., *Rothensies v. Electric Battery Co.*, 329 U.S. 296, 298; *Estate of Block v. Commissioner*, 39 B.T.A. 338, affirmed sub nom. *Union Trust Co. v. Commissioner*, 111 F.2d 60 (7th Cir.), certiorari denied 311 U.S. 658. The principle has even been applied in appropriate cases to override specific statutory nonrecognition provisions, thus making taxable amounts otherwise excludable from income. See, e.g., *Tennessee Carolina Transportation, Inc. v. Commissioner*, 65 T.C. 440, affirmed 582 F. 2d 378 (6th Cir.) (sec. 336); *Estate of Munter v. Commissioner*, 63 T.C. 663 (sec. 337); *McCamant v. Commissioner*, 32 T.C. 824, 833–835 (sec. 22(b)(1)(A) of the 1939 Code, analogous to section 101(a)(1) of the 1954 Code).[6] Moreover, the so-called tax benefit rule has been explicitly recognized in section 111(a) of the Code which places limitations on the amounts to be included in gross income in specified types of restorations. Thus, it provides that gross income does not include the recovery of a "bad debt, prior tax, or delinquency amount" to the extent of the "recovery exclusion" which is in substance defined (sec. 111(b)(4)) to mean the amount on account of which the item in question did not result in a reduction of taxes in the earlier year.[7]

There can be no serious challenge to the broad sweep of the tax benefit rule, and in considering its applicability here, we even find precedent for applying the rule in a case involving property once the subject of a charitable contribution deduction that is subsequently returned to the donor. In *Alice Phelan Sullivan Corp. v. United States*, 381 F.2d 399 (Ct.Cl.), there were returned to the taxpayer two parcels of real estate each of which

---

[6]It has been held, however, in cases involving specific statutory nonrecognition provisions, that something must be "received" or that there must be an actual "recovery" in the subsequent year to justify inclusion of the previously deducted item in current gross income. See *Nash v. United States*, 398 U.S. 1; *Estate of Schmidt v. Commissioner*, 355 F.2d 111 (9th Cir.). This requirement is not a bar to the application of the tax benefit rule in this case because the property which was the subject of petitioners' gifts was in fact reconveyed to them in the years at issue.

[7]Petitioners do not contend that the statutory "recovery exclusion" applies in this case. This limitation on the tax benefit rule in specified types of cases first appeared in 1942 (sec. 116 of the Revenue Act of 1942 adding par. (12) to sec. 22(b) of the 1939 Code). However, it was certainly not intended to deny the general applicability of the rule in other appropriate situations, cf., e.g., sec. 1.111–1(a), Income Tax Regs.; *Dobson v. Commissioner*, 320 U.S. 489, 506; *California & Hawaiian Sugar Refining Corp. v. United States*, 311 F.2d 235, 238–239 (Ct.Cl.).

it had previously donated and claimed as a charitable contribution deduction in a prior year. Each of the original gifts had been made subject to the condition that the property be used for a religious or educational purpose, and when the donee later determined not to use the gift, it was reconveyed to the taxpayer. The Court of Claims held not only that the recoupment property was classified as income but also that the amount of reportable income was not limited by the more favorable tax rates which were in effect at the time of the original gifts, provided only that the taxpayer had taken full benefit of the deductions available in the earlier years. See also *Mason v. United States*, 513 F.2d 25, 30 (7th Cir.).[8]

Petitioners do not challenge the correctness of the result in *Alice Phelan Sullivan Corp.*, but rather seek to distinguish it. They correctly point out that in *Alice Phelan Sullivan Corp.*, the subject property was returned to the taxpayer pursuant to a condition in the original gift that the property would be returned if it ceased to be used either for a religious or for an educational purpose. Here, by contrast, both of the petitioners' gifts were unconditional, and neither the city nor the hospital was under any obligation whatsoever to transfer the property back to the petitioners. From this petitioners argue that the property was returned to them by way of a "gift" from the city and the hospital excludable from income under section 102(a),[9] and that the tax benefit rule does not apply to receipts subject to section 102(a). We do not agree with the factual predicate to this argument.

As a factual matter, we cannot accept the contention that petitioners received "gifts" as the concept was defined in *Commissioner v. Duberstein*, 363 U.S. 278, 285–286, when the property was reconveyed to them. We think it clear that neither charitable donee transferred the property back to petitioners out of any detached or disinterested generosity;[10] they made the

---

[8]Cf. *Estate of Wasie v. Commissioner*, T.C. Memo. 1977–323.

[9]Sec. 102(a), I.R.C. 1954, provides:

SEC. 102. GIFTS AND INHERITANCES.

   (a) GENERAL RULE.—Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.

[10]The stipulation that neither of the charitable donees was under any obligation whatsoever to return the property does not necessarily establish that the transfers were gifts. *Commissioner v. Duberstein*, 363 U.S. 278, 285. Similarly, the fact that some of the supporting documentation may have referred to such transfers as "gifts" is not controlling. *Commissioner v. Duberstein, supra* at 286.

transfers because they found the property to be burdensome and because they desired to "undo" the original gift transactions by returning the property to the parties who had originally made the gifts to them.[11] It would strain our credulity to conclude that the city and the hospital would have transferred the property to petitioners without consideration if they had originally purchased it from petitioners or had obtained it from some other source. The reconveyances to petitioners were not nontaxable "gifts" within the criteria set forth in *Duberstein*. We therefore need not reach petitioners' argument that section 102(a) precludes application of the tax benefit rule to these transactions.[12]

Petitioners also contend that there has been no "recovery" within the meaning of the tax benefit rule because there has been no receipt of "amounts in respect of" the previously deducted charitable gifts.[13] Petitioners cite the absence of a legal obligation to return the property and urge us to conclude that the reconveyances were totally separate and independent transactions from the original gifts. We are unconvinced.

We agree with the limited proposition that the tax benefit rule requires a sufficient factual nexus between the event producing the tax benefit and the event constituting the recovery to justify viewing the latter event together with the former. See *Dobson v. Commissioner*, 320 U.S. 489, 502; *Farr v. Commissioner*, 11 T.C. 552, 567, affirmed sub nom. *Sloane v. Commissioner*, 188 F.2d 254 (6th Cir.); 1 J. Mertens, Law of Federal Income Taxation, sec. 7.37, at p. 125. See also *Allen v.*

---

Such term was used obviously only in a descriptive sense to indicate the absence of consideration, and not to establish that the criteria set forth in *Duberstein* had been satisfied so as to bring into play the provisions of sec. 102(a).

[11]The city council of Fall River conditioned the return to the property on petitioners' reimbursement of all expenses incurred by the city for the property. The board of trustees of Union Hospital felt that the property was becoming a liability due to deterioration, and that reconveyance of the property was necessary to correct a "mistake of fact." These facts lead us to conclude that the charitable donees of the property made the reconveyances primarily to return to the original status before the gifts.

[12]Petitioners' reliance on *Reynolds v. Boos*, 188 F.2d 322 (8th Cir.), and *Cox v. Kraemer*, 88 F. Supp. 835 (D. Conn.), is misplaced. Although neither case involved a recovery of property previously the subject of a charitable gift, both cases dealt with the applicability of the tax benefit rule to recoveries found to be gifts. Their factual conclusions on the gift issue appear doubtful in light of the criteria set forth in the subsequently decided *Duberstein* case. Finally, the question is one to be resolved by the trier of fact on the basis of the record in each case, see, e.g., *Commissioner v. Duberstein, supra* at 289, and we have no doubt on the record before us that the return of the property to petitioners by each original donee cannot fairly be found to constitute a "gift" within the meaning of sec. 102.

[13]See sec. 1.111–1(a)(2), Income Tax Regs.

*Trust Co. of Georgia,* 180 F.2d 527 (5th Cir.); *Continental Illinois National Bank v. Commissioner,* 69 T.C. 357, 364–372. However, we have found that the purpose of the reconveyances was a desire by the donees to reverse the original gift transactions, and that the reconveyances without consideration would not have been made to petitioners were it not for the fact that they were the original donors of the property. The recoveries were far from the coincidental happenstances that petitioners would have us believe. This is especially true in light of the relatively short time periods between the original gifts and the reconveyances.

Nor can we agree, at least in cases where the return of property is not a "gift," that a legal obligation on the part of the transferor to return the property is always a sine qua non for application of the tax benefit rule. We think it sufficient that the transferor specifically intend the transfer to be a repayment, restoration, or return of property formerly belonging to the transferee that was the subject of a previous transaction producing a tax benefit, and that the transferee accept it for such purpose. See *Bear Mill Manufacturing Co. v. Commissioner,* 15 T.C. 703, 706–708; *Excelsior Printing Co. v. Commissioner,* 16 B.T.A. 886, 887–888.[14] This was the case in respect of the reconveyances by the city and the hospital—they were intended merely to reverse previous charitable donations. Under these circumstances, we see no reason to allow a windfall tax benefit based upon two charitable contributions deductions, particularly when, in the end, petitioners owned the very same property they tried to give away. Cf. *Farr v. Commissioner,* 11 T.C. at 567. The purposes of the tax benefit rule[15] are well served by requiring inclusion in gross income of the fair market value of the property at the times it was returned to petitioners.

In respect of the year 1974 petitioners contend that if they are required to include the receipt of the property in their gross income, the correct amount should be only $20,000, "computed as the fair market value of the property" when returned to them by the hospital ($25,000) minus $5,000 which they spent later

---

[14]In *Bear Mill Manufacturing Co. v. Commissioner,* 15 T.C. 703, and *Excelsior Printing Co. v. Commissioner,* 16 B.T.A. 886, it was held that there was a taxable recovery of a previously deducted bad debt when a third party, not a party to the loan transaction, and not otherwise legally obligated to repay the debt, made a transfer of property to the creditor with the intention that the debt be satisfied, and the creditor accepted it for the purpose the transferor intended. It should be noted that in both cases we found that the transferor did not intend to make a gift to the creditor.

[15]See n. 5 *supra.*

that year to demolish the building. The Commissioner agrees that the amount to be included is to be measured by the $25,000 stipulated value rather than $49,740 which he had previously determined in his deficiency notice. However, he contests the reduction of the $25,000 amount by the subsequently incurred demolition expense. We agree that the $5,000 expenditure was an entirely separate item which may not be used to reduce the $25,000 stipulated value of the property at the time it was returned by the hospital in 1974. If petitioners are to have the benefit of that expense in 1974 they must point to some provision of the statute which gives them a deduction therefor. This they have not done, nor have they even articulated a theory upon which we might hold that they are entitled to a $5,000 deduction in 1974 for the demolition costs.

To the extent that petitioners may suggest that the demolition costs must be taken into account in fixing the fair market value of the property by reason of its vandalized condition, the point is wholly without merit on this record. The parties have already stipulated that the fair market value of the property on the date of its return in 1974 was $25,000, reflecting a reduction of almost 50 percent from its value the preceding year, and we must conclude on the materials before us that such stipulated fair market value has already fully taken into account the deteriorated state of the property. No further reduction in value is called for in the light of the stipulation of the parties. The amount properly includable in their 1974 gross income in respect of the hospital's return of the property to them is its stipulated fair market value at the time of the reconveyance, $25,000, unreduced by any subsequent demolition expenses incurred by them.[16]

*Decision will be entered under Rule 155.*

---

[16]We do not consider the possible contention that proper application of the tax benefit rule would require a complete reversal of the deduction in the earlier year by including in income of the later year the full amount previously deducted upon complete restoration of the identical property which gave rise to the deduction. Cf. *Alice Phelan Sullivan Corp. v. Commissioner,* 381 F.2d 399, 402 (Ct.Cl.). The Commissioner now seeks to include in income in this case only the fair market value of the property when it was returned, an amount that is smaller in each instance than the amount previously deducted. In such a case, the measure of the amount included is at least the fair market value of the property recovered. See *Tennessee Carolina Transportation, Inc. v. Commissioner,* 65 T.C. 440, 448, affirmed 582 F.2d 378 (6th Cir.); cf. *Spitalny v. United States,* 430 F.2d 195, 198 (9th Cir.). As set forth in our findings of fact, the parties have stipulated the "values" of the property at the times it was returned to petitioners, which we take to be fair market values.